### EDNER v. MATHEWS.

### SAME v. MASSACHUSETTS MUT. LIFE INS. CO. (MATHEWS, Third-Party Defendant).

#### Civil Actions Nos. 1769, 2200.

District Court, W. D. Pennsylvania.

Dec. 29, 1944.

See also 44 F.Supp. 872.

L. D. McCall, of DuBois, Pa., and Kountz & Fry, of Pittsburgh, Pa., for plaintiff.

Albrecht, Maguire & Mills, of Buffalo, N. Y., and P. K. Motheral and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for third-party defendant.

SCHOONMAKER, District Judge.

These two cases were tried together. In the action at No. 1769 C. A., plaintiff is seeking to recover one thousand shares of stock of Mill Creek Gas & Oil Company (a Pennsylvania corporation), which George B. Mathews (now deceased) acquired, among other properties, under the terms of an agreement between Lum and Mathews, dated February 2, 1934, to secure debts of $37,964.62, then owed by Lum to Mathews, and an additional $71,801.21 which Mathews then paid to satisfy Lum's debts which were all satisfied at that time except in the case of a few creditors who were secured by other collateral, or not then pressing their claims.

In the action at No. 2200 Civil Action, plaintiff is seeking to recover the cash-surrender value of three policies of insurance issued by Massachusetts Mutual Life Insurance Company upon the life of George H. Lum. The Insurance Company, by interpleader proceedings, brought in Jenny R. Mathews, executrix of the Estate of George B. Mathews, as a third-party defendant. She claims these policies by virtue of an assignment from Lum; and alleges that although the assignments thereof are in the form of collateral assignments, they are in fact absolute assignments, and by her counterclaim filed here-

in, asks the court to decree that she be given absolute assignments thereof.

The facts of the case may be briefly stated as follows:

In 1933 Lum was in financial difficulties and was in danger of losing collateral which he had pledged to certain of his creditors. He appealed to George B. Mathews (now deceased) for financial help. At that time he owed Mathews $37,964.62. As a result of their negotiations, Mathews and Lum entered into a contract dated February 2, 1934 (Exhibit A attached to the complaint herein), wherein it was agreed that Lum would sell, and Mathews would buy, certain assets and property of him for $71,801.21. Among these properties were farms in the Town of Somerset, New York, three policies of insurance in the Massachusetts Mutual Life Insurance Company on the life of Lum, certain stocks in oil and gas companies in Pennsylvania (which by reason of merger resulted in one thousand shares of stock of the Mill Creek Gas and Oil Company being issued to said Mathews). As a result of this agreement, Lum's indebtedness to Mathews of $37,964.62 was cancelled; and Mathews advanced $71,801.21 to pay Lum's debts, making a total of $109,765.83.

By this agreement Lum had a right to re-purchase the assets conveyed to Mathews for $109,765.83, plus four percent interest, when Mathews would return to Lum the notes Lum had given him, and any unsold collateral. This re-purchase option was to be kept alive by payments of $2800 a year in monthly installments; and if any required payment was one hundred and twenty days in arrear, the option was to be cancelled. Pursuant to this contract, Mathews paid off $71,801.21 of Lum's debts and secured the release of such debts and any collateral held by these creditors. Mathews then took over said collateral and Lum also delivered to Mathews deeds for the New York real estate. Lum made option payments of $2,219.47, but became in default thereon. On January 12, 1939, Mathews informed Lum of default in the option. Since that time no further payments have been made on the option.

Lum filed a voluntary petition in bankruptcy in this court on October 20, 1940, and was adjudged a bankrupt. At this time the cash-surrender value of the insurance policies assigned to Mathews was $15,071.70. Mathews had then paid $15,-957.84 in premiums and policy loans which had accrued prior to that date, and since then has paid at least $6,790.42 on these policies.

On these facts we are of the opinion that plaintiff is not entitled to any relief in either action.

The contract of February 2, 1934, was a valid contract of sale entered into for a present consideration; i. e., the cancellation of Lum's debt to Mathews and the payment of debts owed by Lum at that time except a few debts that were otherwise secured.

The creditors of the bankrupt now affected by the instant bankruptcy proceedings became such after the conveyance of the assets here involved became effective, and could not be set aside without putting Mathews in the position he occupied before he paid out $71,801.21 to satisfy Lum's debts. There is no offer to do this in the present actions.

The plaintiff contends that the contract operated as a general assignment for benefit of creditors. That might be so if the parties so intended. The contract here involved is a New York contract and must be construed in accordance with the laws of that state. See Irving Trust Co. v. Maryland Casualty Co., 2 Cir., 83 F.2d 168, 171, 111 A.L.R. 781; Townsend v. Maynard, 45 Pa. 198. The New York law is that instruments which are not intended by debtor to operate as an assignment for benefit of creditors will not be construed so to operate. See Ensign v. Ensign, 120 N.Y. 655, 24 N.E. 942; Tompkins v. Hunter, 149 N.Y. 117, 43 N.E. 532.

In Ensign v. Ensign, supra, the court said:

"The rule that such a deed may, in an action between the parties to it, be shown by oral evidence to have been given and received to secure the payment of a debt, is firmly established in this state. * * * The burden of establishing an oral defeasance to such a deed is an onerous one, resting on whoever alleges it, and its existence, and also its precise terms, must be established by clear and conclusive evidence; otherwise the strong presumption that the deed expresses the entire contract between the parties to it is not overcome. A conveyance of land in fee, so executed, acknowledged, and recorded, is of too great solemnity, and of too much importance, to be set aside, or converted into a mere security upon loose or uncertain testimony; and

it will not be, unless the existence of the alleged oral defeasance is established beyond a reasonable doubt."

There was no evidence in the instant case from which it could be found that the parties intended the contract to operate as a general assignment.

The next contention of plaintiff is that the contract was void under the Fraudulent Conveyance Statutes, 39 P.S. Pa. § 351 et seq., because it screened Lum's assets, and so hindered and delayed his creditors. There was no evidence of actual fraud in the instant case. Therefore, the only question left for consideration is whether or not there was a fair consideration for the conveyance. We are of the opinion there was a fair consideration. Mathews not only satisfied his debt of $37,-964.62, but actually paid $71,801.21 to Lum's creditors, making a total sum of $109,765.-83 as consideration of the conveyance to him.

As to the insurance policies involved in Civil Action No. 2200, we are unable to find that the assignments of these policies were made collateral in form by fraud or mistake; and we will deny Mathew's counterclaim for reformation of these assignments.

Our findings of fact and conclusions of law in these two cases are filed herewith.

Plaintiff's claim for relief in both actions will be denied. Orders may be submitted accordingly in both actions on notice to opposing counsel.