**HARPER**

v.

**LLOYD'S FACTORS, Inc.**

No. 239, Docket 23030.

United States Court of Appeals Second Circuit.

Argued April 13, 1954.

Decided July 12, 1954.

Harold Harper, New York City (Marks & Richter, Philip Marks, and Lawrence M. Soifer, New York City, on the brief), pro se, plaintiff-appellant.

Harvey T. Mann, New York City (Meadow, Mann & Clyne, New York City, on the brief), for defendant-appellee.

Before CLARK, HINCKS, and HARLAN, Circuit Judges.

CLARK, Circuit Judge.

The plaintiff here sues as trustee in bankruptcy of one Harry Steinfeld to set aside a transfer of $10,000 to defendant as fraudulent under § 67, sub. d, of the Bankruptcy Act, 11 U.S.C. § 107, sub. d, and § 276 of N.Y. Debtor and Creditor Law, McK.Consol.Laws, c. 12, made available under § 70, sub. e, of the Bankruptcy Act, 11 U.S.C. § 110, sub. e. Steinfeld was a large manufacturer of furs in New York City; and on January 31, 1951, he obtained from J. G. Reichenthal & Son, Inc., fur merchants and fur dealers, a consignment of mink skins valued at approximately $27,000. Reichenthal

was unwilling to negotiate the sale of all these skins on credit, and so Steinfeld agreed to find a factor to purchase a part of his purchase money notes. The defendant, Lloyd's Factors, Inc., was a commercial factor, whose business was buying notes and accounts receivable. Steinfeld and defendant entered into an oral agreement whereby defendant would purchase certain of these notes totaling $10,000 from Reichenthal on funds provided by Steinfeld, to whom the notes would be returned. The purpose of this arrangement, as found by the court below to have been disclosed by Steinfeld and believed by the defendant, was to enable him to obtain the benefit of the discount on the price of the furs for which the notes were given, this being a discount customarily given to defendant by fur dealers who sold notes to it as a factor. So Steinfeld on February 1, 1951, transferred $10,000 to defendant for the purpose thus agreed upon. Of the skins consigned to Steinfeld by Reichenthal, Steinfeld bought a part for the sum of $13,656, giving therefor two notes signed by him, each for $5,000 and due June 29, 1951; and the balance of $3,656 was carried as an account due from him to Reichenthal. On February 6, 1951, the defendant purchased the two notes from Reichenthal for $9,512.50, being their face amount plus interest of $115.28, less a service charge of $361.66 and discount charges of $241.10, or a total deduction of $602.76. The deductions represented a discount of the (nearly) four months' notes calculated at the rate of 15 per cent per annum, that being a usual factoring commission.

On that same day the defendant turned the notes over to Steinfeld, paying him the sum of $292.50 as his share of the discount, retaining $97.49 for its services and paying $97.49 to Steinfeld's attorney for the latter's services in the negotiation. Reichenthal permitted the remainder of the consigned skins to remain in the possession of Steinfeld, who apparently converted them. An involuntary petition was filed against Steinfeld on February 14, 1951, and he was adjudicated a bankrupt on March 9, 1951.

The plaintiff-trustee claims that this "bizarre" transaction was fraudulent in fact and in law; but the court below has found no actual fraudulent intent, or knowledge of Steinfeld's impending bankruptcy, on defendant's part and no fraud in law. We are constrained to agree.

It will be noticed that in this three-cornered transaction, each got something, though the bankrupt got by far the lion's share. For $10,000, less his share of the discount, he got possession of furs worth $27,000, which apparently he then turned into money. Thus the loss to the estate comes from these later acts of the bankrupt, not from anything defendant did; on the contrary the latter benefited the estate by enabling the transaction to go through, collecting only a very small commission, about 1 per cent. Reichenthal eventually lost substantially on its consignment of furs, but actually it got the partial payment of $10,000 which it sought. There is nothing in any of this which shows fraud in law or lack of fair consideration under § 67, sub. d(1) (e), of the Bankruptcy Act. Plaintiff claims that the consideration here was only an executory promise, but the entire contract was carried out as agreed upon and the promise was executed by delivery of the notes back to the bankrupt. Thus a fair and indeed full consideration was actually given on completion of the transaction within five days from its initiation and substantially before the bankruptcy. See Bankruptcy Act § 67, sub. d(5), and discussion in 4 Collier on Bankruptcy ¶67.40 (14th Ed. 1942), also id. ¶67.33 at pages 352–354. The same conclusion applies to the contention under § 70, sub. e, of the Bankruptcy Act giving effect to § 276 of N.Y. Debtor and Creditor Law. While Steinfeld's failure appears to have been spectacular in amount, there was no evidence to show that his condition was known generally, or particularly by this defendant, who had not dealt with him before. There was some evidence that defendant

had not been straightforward in explaining to Reichenthal, in response to certain inquiries made to it, what its arrangements with the bankrupt were. Whether or not Reichenthal was thereby misled (a point itself not made clear) there was no duty owed here, for breach of which the trustee can complain; for there was no overreaching of the bankrupt or defrauding of his estate to the creditors' loss.

Affirmed.