**Harold C. ABRAMSON, Trustee, Appellant,**

**v.**

**PRINTER'S BINDERY, INC., Appellee.**

No. 17246.

Court of Civil Appeals of Texas.

Dallas.

April 11, 1969.

Terrence Kendall, of Palmer, Palmer & Burke, Dallas, for appellant.

Joe B. Abbey, Richard D. Haynes, Dallas, for appellee.

DIXON, Chief Justice.

Appellant Harold C. Abramson is the duly appointed Trustee in Bankruptcy for Graphic House, Inc., hereinafter called Graphic. He brought this suit as Trustee against Printer's Bindery, Inc., hereinafter called Bindery, seeking to recover sums collected on accounts receivable purchased from Graphic by Bindery.

In a nonjury trial judgment was rendered that Trustee take nothing by his suit.

It is Trustee's position that the purported sale of the accounts and the money collected on them took place within four months before the filing by Graphic of a voluntary petition in bankruptcy and at a time when Graphic was insolvent; that

the effect of the said collection of some of the accounts will be to enable Bindery to obtain a greater percentage of its antecedent debt than some other creditor of the same class; and, further, that Bindery had reasonable cause to believe that Graphic was insolvent—all as provided in 11 U.S.C.A. §§ 96(a) (1) and 96(b).

Most of the facts are undisputed. On November 28, 1966 Bindery purchased accounts receivable from Graphic totaling $6,331.73 for a cash consideration of $4,063.00 paid contemporaneously. The sale is evidenced by a bill of sale executed the same date in behalf of Graphic by J. B. Powell, Graphic's President. Of the $6,331.73 in accounts Bindery was able to collect only $2,930.72.

Bindery did not file a statement of its purchase of the accounts with the Secretary of State of the State of Texas as provided by Sections 9–102(1) (b), 9–302(1) (e) and 9–401(1) (c), Uniform Commercial Code.[1]

On February 16, 1967 Graphic filed its voluntary petition in bankruptcy signed by its President J. B. Powell.

A key figure in arranging the transfer of the accounts was Dudley Bumpass, a self-employed certified public accountant. Both Graphic and Bindery were his clients. Some time prior to November 28, 1966 Bumpass, knowing that Graphic was having financial difficulties, set up a program which was expected to enable Graphic to continue in business on a sound financial basis. Graphic had been doing about $10,000 worth of business every month. It was decided that some of Graphic's accounts receivable should be sold in order to obtain cash to pay pressing short term debts such as taxes due the Internal Revenue Department, rent, etc. This decision was made with the approval of an official of the bank where Graphic carried its account. The bank had some time previously made a loan to Graphic. Bumpass tried without success to factor the accounts to professional factors, who were not interested because of the small size of the accounts. Finally Bumpass persuaded Bindery, acting through its President, James W. Wertz, to purchase the accounts receivable.

The Trustee's suit is based on the failure of Bindery to record its purchase of the accounts with the Secretary of State of the State of Texas. Under the Bankruptcy Statute a failure to comply with such a state statute constitutes a failure to perfect the transfer at the time of the purchase, and as a consequence the transfer shall be deemed to have been made *immediately before* the filing of the petition in bankruptcy. 11 U.S.C.A. § 96(a) (2). Therefore, according to the Trustee, the transfer of the accounts receiveable in this case is deemed to have been made immediately before February 16, 1967 when the petition in bankruptcy was filed—not on November 28, 1966 when Bindery paid the cash consideration to Graphic of $4,063 and received the bill of sale. As a matter of fact both dates are within the four month period prior to the filing of the petition in bankruptcy.

The Texas recording statute heretofore referred to, Section 9–302(1) (e) of the Uniform Commercial Code, provides an exception to the application of the statute. It is as follows:

"(1) A financing statement must be filed to perfect all security interests except the following: * * *

(e) an assignment of accounts * * * which does not alone or in conjunction

---

1. The 59th Legislature enacted the Uniform Commercial Code, effective June 30, 1966. Thereafter the Uniform Commercial Code was itself repealed when the 60th Legislature enacted the Business and Commercial Code effective September 1, 1967. However the events involved in this appeal occurred while the Uniform Commercial Code was still in effect, so the citations to sections of the State statutes refer to the Uniform Commercial Code.

with other assignments to the same assignee transfer a significant part of the outstanding accounts * * * of the assignor."

What is the legal meaning of the phrase "significant part" as used in the above quoted exception to the recording statute? We have not been cited to a definition of the phrase and we know of none.

The Code Commentary following Section 9.302 is as follows:

"The purpose of the subsection (1)(e) exemptions is to save from *ex post facto* invalidation *casual* or *isolated* assignments: some accounts receivable statutes have been so broadly drafted that all assignments, whatever their character or purpose, fall within their filing provisions. Under such statutes many assignments which no one would think of filing may be subject to invalidation. The subsection (1)(e) exemptions go to that type of assignment. Any person who *regularly* takes assignments of any debtor's accounts should file."[2] (Emphasis ours.)

Appellee Bindery says that it comes within the exception above quoted. The trial court agreed with Bindery. One of the court's conclusions was as follows:

"Plaintiff having failed to establish by competent evidence that a significant part of the accounts receivable of Graphic was transferred must fail under the above statutory provisions."

In his first point of error Trustee asserts that the court erred in holding that Trustee as plaintiff failed to establish that a significant part of the accounts receivable of the bankrupt had been transferred to Bindery.

█ The transfer of the accounts in this case may be characterized as casual or isolated. Certainly there is no evidence

that Bindery "regularly takes assignments of any debtor's account," to quote the language used in the commentary. The purchase by Bindery in this instance was done at the behest of the auditor, Bumpass. He persuaded Wertz, Bindery's President, to have Bindery purchase the accounts, (1) as a safe investment and (2) to enable a good customer of long standing to meet pressing short term debts. It is undisputed, as we shall point out later in this opinion, that so far as Graphic and its creditors are concerned Bindery paid a fair, adequate consideration for the accounts. Trustee's first point is overruled.

In his second point of error Trustee takes issue with the court for concluding that the transaction in question is to be denominated a sale and not a loan and lien.

Certainly the transfer of the accounts was not made as security for a loan. The terms of the bill of sale are unconditional and unqualified. The instrument recites that "For, and in consideration of, the delivery of certain printing work, and cash, to Graphic House, Inc. by Printers Bindery, Inc., the said Graphic House, Inc. does hereby assign and transfer all right, title, interest and proceeds" of the accounts receivable thereafter listed. The undisputed testimony of Wertz, Powell and Bumpass is to the same effect.

Trustee's position with reference to his second point is well stated in his brief. His statement is as follows:

"In this case, Defendant paid the Bankrupt $4,063.00 on November 28, 1966, and received a piece of paper on that same day supposedly evidencing a sale of accounts; due, however, to Defendant's failure to perfect his purchase of accounts receivable against third parties, the piece of paper he received adds nothing to his position (Vernon's Texas Codes Annotated, Business and Com-

---

**2.** This commentary will be found on pages 335–336 of Vol. 3 of the Business and Commerce Code, Vernon's Ann.Civ.St., in referring to the prior Uniform Commercial Code, which was in effect at all times pertinent hereto.

merce Code, Sections 9.301 and 9.302). Had nothing more happened, no collections been made, Appellee would be classed as an unsecured creditor in the bankruptcy estate to the extent of $4,063.00 (11 U.S.C. Sec. 110c). The debt in this case arose with the payment of $4,063.00 to the Bankrupt, coupled with the failure to perfect under Texas law.

Here, however, the Defendant actually collected $2,930.72 upon subsequent dates, which is credited against the $4,063.00. *Since the $4,063.00 debt is antecedent to the $2,930.72 collections, the latter are credits upon an antecedent debt.* It is not the contemporaneous transfer of the piece of paper which the Trustee attacks, but rather the subsequent collections on the antecedent debt.

Precisely in point is the decision of the Supreme Court of the United States in Corn Exchange National Bank & Trust Co. v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943), where the bank failed to comply with Pennsylvania law for perfecting an assignment of accounts from the company of which Klauder subsequently became Trustee in Bankruptcy." (Emphasis ours.)

■ It is to be noted that in *Klauder,* unlike the case now before us, the court was unquestionably dealing with a loan secured by accounts receivable—not an outright sale of the accounts for a fair consideration as is the case here. Under the undisputed facts of this case, which we shall discuss in more detail hereinafter, we are of the opinion that the court correctly concluded that the transaction in question was a sale of the accounts receivable. Appellant's second point is overruled.

However, we need not rest our decision alone on our overruling Trustee's two points of error. We have concluded that the transaction between Graphic and Bindery does not constitute a preference under the Bankruptcy Act and cannot be voided by Trustee because the consideration paid by Bindery was fair and adequate (in fact much more than fair and adequate) as to Graphic and its creditors.

As to the fairness of the consideration: Bindery paid Graphic $4,063 in cash. Bindery was able to realize only the sum of $2,930.72 from the accounts. Consequently Bindery, as found by the trial court, has an unrecoverable investment in excess of $1,132.28.

The only direct testimony in regard to the adequacy of the consideration was that of the auditor, Bumpass. He testified that Bindery made a mistake, that it paid too much for the accounts receivable. Only $2,930.72 of the accounts were "any good". The rest of the accounts were "uncollectibles".

■ We think the trial court correctly concluded that there was no transfer which enabled a creditor to obtain a greater percentage of his debt than some other creditor of the same class. In fact the court further concluded, and we believe correctly, that the bankrupt estate had not been diminished, but had been enriched to the extent of $1,132.28.

Without extending this discussion we cite the following authorities in support of our holding that the undisputed facts in this case show a fair consideration was paid by Bindery and that therefore there was no preference under the Bankruptcy Act: 11 U.S.C.A. Section 96(a) (1); 11 U.S.C.A. Sections 107(d) (6), 107(d) (1) (e) and 107(d) (2). See long list of cases cited under 11 U.S.C.A. Section 96(a) (1), note 49, holding that a transfer of property is not a preference unless there was a diminution of the estate by reason of the transfer. See also Britt v. Damson, 334 F.2d 896 (9th Cir. 1964), cert. denied, 85 S.Ct. 661, 379 U.S. 966, 13 L.Ed.2d 560 (adequate and fair consideration); Gonterman v. Nicholas, 270 F.2d 509 (5th Cir. 1959) (fair consideration); Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823, 274

F.2d 320 (5th Cir. 1960), cert. denied, 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (lists six elements necessary to support voidance of transfer by trustee—if any lacking there is no preference); Hummell v. Cernocky, 161 F.2d 685 (7th Cir. 1947); Harper v. Lloyd's Factors, 214 F.2d 662 (2d Cir. 1954) (sale of accounts receivable); Williams v. Twin City Co., 251 F.2d 678 (9th Cir. 1958) (adequate consideration); Cohen v. Surtherland, 257 F.2d 737 (2d Cir. 1958); Simon v. Rolfs, 82 F.2d 552 (7th Cir. 1936); Edner v. Matthews, 58 F.Supp. 486 (1944), affirmed 151 F.2d 335, cert. denied, 327 U.S. 807, 66 S.Ct. 965, 90 L.Ed. 1031.

Having concluded that the evidence in this case fails to show a preference under the Bankruptcy Law we affirm the trial court's judgment.

Affirmed.