[No. 44499.   En Banc.   April 7, 1977.]

ARCHITECTURAL WOODS, INC., *Appellant,* v. THE STATE OF WASHINGTON, *Respondent.*

*Kane, Vanderberg & Hartinger,* by *Harold T. Hartinger,* for appellant.

*Slade Gorton, Attorney General,* and *Richard M. Montecucco, Assistant,* for respondent.

BRACHTENBACH, J.—This case involves interpretation of one section of article 9 of the Uniform Commercial Code, RCW 62A. The trial court dismissed the action on the basis that plaintiff was required to, and had not, perfected its assigned interest in certain contract rights. We reverse.

The action arises from an assignment of contract rights. The plaintiff is a wholesaler of wood products. One of its customers was Didco Corporation. Didco contracted with The Evergreen State College to furnish student rooms for a price of $144,953; this project required substantial quantities of plaintiff's products. In June 1971, Didco assigned $100,000 of the contract rights to plaintiff. At that time Didco owed plaintiff $56,920. Prior to Didco's assignment of the balance of $44,953 to plaintiff in October, Didco owed plaintiff $129,860.

The Evergreen State College was notified in writing of the assignments and directed to make payments directly to plaintiff. Evergreen in fact did make all contract payments to plaintiff except for a final payment of $48,776.89. Evergreen paid that amount to Didco's successor in interest, Moduleader Corporation. Moduleader had granted a security interest to the National Bank of Commerce (NBC), including all accounts and contract rights. This occurred several months after the assignments to plaintiff. Evergreen was unaware of NBC's potential security interest in these contract rights. The payment made to Moduleader was applied to the debt to NBC. Why Evergreen paid Moduleader with full knowledge of the assignments to plaintiff is not explained. Evergreen made no effort to ascertain the status of the assignments to plaintiff.

Plaintiff contends that it is entitled to the balance of the contract proceeds pursuant to its written assignments. Evergreen asserts that under the Uniform Commercial Code NBC had a priority to the proceeds as against plaintiff, a priority which it claims it can use for its defense.

The legal problem is that plaintiff did not perfect its assignments by filing a financing statement as required by RCW 62A.9–302, while NBC did so file as to its later assignment.

Plaintiff, however, contends that its assignments are exempt from the requirement of filing and thus were perfected at the time of the assignment. Plaintiff relies on RCW 62A.9–302(1)(e) which states:

(1) A financing statement must be filed to perfect all security interests except the following:

. . .

(e) an assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor;

We agree with plaintiff. Since this conclusion is dispositive we need not consider other theories raised by the parties.

The meaning and purpose of the exemption of RCW 62A.9–302(1)(e) has been the subject of considerable amount of litigation and comment. Some cases measure the exemption by the percentage difference between the assigned account and the total of outstanding accounts and contract rights of the assignor. For example, in *Standard Lumber Co. v. Chamber Frames, Inc.,* 317 F. Supp. 837 (E.D. Ark. 1970), the court held that an assignment of 16 percent of outstanding accounts was not a significant part thereof and therefore exempt from filing. But the percentage test will never have any certainty as various courts find certain percentages to be significant or not. Other cases may find the dollar amount to be significant without regard to the percentage. *See Park Ave. Bank v. Bassford,* 232 Ga. 216, 205 S.E.2d 861 (1974).

■ ■ Other cases rely on the circumstances surrounding the assignment rather than the percentage test. *See for example E. Turgeon Constr. Co. v. Elhatton Plumbing & Heating Co.,* 110 R.I. 303, 292 A.2d 230 (1972); *Abramson v. Printer's Bindery, Inc.,* 440 S.W.2d 326 (Tex. Civ. App. 1969). This approach stems from the language of Official Comment 5, RCWA 62A.9–302, which states:

The purpose of the subsection (1) (e) exemptions is to save from *ex post facto* invalidation casual or isolated assignments: some accounts receivable statutes have been so broadly drafted that all assignments, whatever their character or purpose, fall within their filing provisions. Under such statutes many assignments which no one would think of filing may be subject to invalidation. The

subsection (1) (e) exemptions go to that type of assignment.

The casual or isolated test accords with the views of several eminent writers, acknowledged experts on the code. 1 G. Gilmore, *Security Interests in Personal Property* § 19.6 (1965). In A. Kripke & C. Felsenfeld, *Secured Transactions: A Practical Approach to Article 9 of the Uniform Commercial Code,* 17 Rutgers L. Rev. 168, 189–90 (1962), it is stated:

> Under the Code, a financing statement must be filed to perfect sales or other assignments of "accounts" or "contract rights." However, the Code is intended to govern practical commercial transactions. In this area of intangible transfers, filing is intended to tie in with true financing transactions, *i.e.*, with the commercial financing of receivables. For that reason, section 9–302(1)(e) excepts from the filing requirement (*i.e.*, permits perfection without filing) assignments of accounts or contract rights that do not "alone or in conjunction with other assignments of accounts or contract rights to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor."

(Footnote omitted).

The casual and isolated test is preferable. It squares with the reality that the assignee may not know whether his assignment is a significant part of his assignor's total accounts and contract rights. The assignor may not wish to disclose this information in many instances. And the casual assignee may not consider the transaction to be significant enough to take the time and resources to investigate outside sources of information.

While the casual and isolated test does not follow the literal language of the statute, it does meet the purpose stated in the official comment. A statute is to be construed in a manner consistent with the general purpose thereof. *Wilson v. Lund,* 74 Wn.2d 945, 447 P.2d 718 (1968).

Under the test, the assignee will have the burden of proving that the transaction was casual and isolated. That is particularly susceptible of proof. Here, the trial court

found, and no error is assigned to it, that the assignments were casual and isolated. The trial court, however, dismissed plaintiff's action because it relied on a literal reading of the statute and found that the amounts of the assignments constituted a significant portion of the assignor's accounts and contract rights.

The record supports the finding that the transactions were casual and isolated. Plaintiff was a wholesaler of wood products; it was not in the business of commercial financing or obtaining assignments. This is a significant factor in determining the casual and isolated nature of the assignment. *E. Turgeon Constr. Co. v. Elhatton Plumbing & Heating Co.*, 110 R.I. 303, 292 A.2d 230 (1972). *Compare Vermillion v. Stan Houston Equip. Co.*, 341 F. Supp. 707 (D.S.D. 1972).

Though plaintiff has in the past few years occasionally taken an assignment as payment for materials supplied, it does not regularly take assignments of any debtors' accounts or contract rights, another significant factor. *Abramson v. Printer's Bindery, Inc.*, 440 S.W.2d 326 (Tex. Civ. App. 1969).

Having concluded that the casual and isolated test is the proper one to be applied in determining the exemption under RCW 62A.9–302(1)(e), and the trial court having found that these assignments were casual and isolated, it was error to dismiss plaintiff's action.

The judgment is reversed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Petition for rehearing denied June 29, 1977.