## 55315. FIRST GEORGIA BANK v. M. D. HODGES ENTERPRISES, INC.

McMurray, Judge.

On or about September 25, 1972, John K. Porter Company, Inc., a real estate brokerage concern, executed a promissory note and security agreement for $10,000 to First Georgia Bank. The collateral for the note consisted of the following: "Commissions due from commission agreement dated November 1, 1971 between John K. Porter Company, Inc., and M. D. Hodges Enterprises, Inc., relating to a General Motors Corporation lease of the premises at 790 Great Southwest Parkway, Atlanta, Georgia." The promissory note also contained the following language: "The undersigned agrees that Holder shall have *a lien upon, security title to and a security interest in the Collateral to secure the payment of this* Note

*and all other indebtedness or liability of the undersigned to Holder, however, and whenever incurred or evidenced,* whether direct or indirect, absolute or contingent, or due or to become due thereafter with this Note collectively called 'Liabilities.' " (Emphasis supplied.)

By letter dated November 28, 1972, M. D. Hodges Enterprises, Inc. was notified by counsel for First Georgia Bank that John K. Porter Company, Inc. had transferred and assigned all of its rights, title and interest in and to commissions payable under the commission agreement dated November 1, 1971, entered into between Hodges and Porter, as collateral on a secured note between Porter and First Georgia Bank. This letter also informed Hodges that no commissions or monies payable to Porter were to be sent to the bank "unless a default occurs in the note." In that event, First Georgia Bank would notify Hodges, and all future commissions payable under the commission agreement would be sent directly to First Georgia Bank. Hodges, by and through its president, on November 30, 1972, acknowledged the assignment and further that it would not be held responsible "until and/or unless Hodges is first notified in writing by the bank that Porter is in default and not before Hodges acknowledges in writing that such notice has been received from the bank."

Thereafter, on May 10, 1976, Hodges was notified that Porter was in default and to pay all future commissions to it. On May 25, 1976, Hodges notified counsel for First Georgia Bank that it was aware of the transfer and assignment of the commissions but that on August 1, 1974, Porter had assigned the commission agreement to Trust Company of Georgia; that on July 16, 1975, thereafter Trust Company of Georgia had advised it to make the commission payments payable to it and subsequent to July 16, 1975, discussions with "Trust Company Bank" with regard to cashing out the agency agreement were entered, and on February 2, 1976, the Agent's Commission Agreement was to be "cashed out," and this had occurred. This letter also advised that "Trust Company Bank" warranted that it owned all right, title and interest of John K. Porter Company, Inc. in the commission agreement and that the bank would defend title to it, pay all costs of every kind whatsoever, including

legal fees, with respect to any litigation that might occur.

It is here noted that the Porter promissory note with collateral had been renewed on several occasions until final payment on April 18, 1974, at which time it was returned to Porter marked paid. In the meantime on September 21, 1973, Porter had borrowed another $15,000 from First Georgia Bank and again on January 21, 1974, it borrowed an additional $15,000 from First Georgia Bank. These two notes were consolidated on April 29, 1974, in which a new note in the amount of $30,000 was executed. It was renewed several times but never paid and is now in default.

First Georgia Bank then sued John K. Porter Company, Inc. for the indebtedness due it and obtained judgment in the amount of $30,025 principal, $8,026.07 interest and $5,707.66 attorney fees. It then proceeded to sue M. D. Hodges Enterprises, Inc. in an amount equal to any commission payments due John K. Porter Company, Inc. under the commission agreement that had been assigned to it, that is, commission payments that became due since defendant M. D. Hodges Enterprises, Inc. received notice from First Georgia Bank to make such payments to the bank. Defendant M. D. Hodges Enterprises, Inc. answered, generally denying the averments of the complaint other than jurisdiction, notification of assignment of commissions and notification of Porter's default; and added defenses of waiver of the security interest in the commissions, estoppel to now assert any interest in the commissions, a release of same, and an accord and satisfaction.

Following discovery defendant Hodges moved for summary judgment and the motion was granted after a hearing, the trial court holding that, "plaintiff had no perfected security interest." Plaintiff appeals. *Held:*

Despite the fact that the plaintiff had never perfected its security interest in the collateral for its loan represented by a promissory note, the defendant was well aware of the assignment of the commissions it owed the debtor, Porter. Consequently, unless plaintiff has waived the security interest, has released it or is estopped to collect the commissions it has a valid claim against the defendant. The evidence discloses only an inference that

the plaintiff had knowledge that its debtor planned to assign it to some other party free and clear of plaintiff's interest. However, this evidence does not demand a finding that the plaintiff voluntarily released its interest in the commissions or otherwise waived its security interest or that there has been an accord and satisfaction with reference thereto. In considering motions for summary judgment the evidence is construed more strongly against the movant and more favorably toward the one opposing the motion. *Jaffe v. Davis,* 134 Ga. App. 651, 654 (215 SE2d 533); *Kaplan v. Sanders,* 136 Ga. App. 902, 904 (4) (222 SE2d 630); *Giant Peanut Co. v. Carolina Chemicals, Inc.,* 129 Ga. App. 718 (1), 719-720 (200 SE2d 918); *Mathis v. R. H. Smallings & Sons, Inc.,* 125 Ga. App. 810 (189 SE2d 122); *Burnette Ford, Inc. v. Hayes,* 227 Ga. 551 (181 SE2d 866).

*Judgment reversed. Bell, C. J., Deen, P. J., Quillian, P. J., Smith, Shulman, Banke and Birdsong, JJ., concur. Webb, J., dissents.*

ARGUED FEBRUARY 7, 1978 — DECIDED JUNE 15, 1978 — REHEARING DENIED JULY 25, 1978 —

*Troutman, Sanders, Lockerman & Ashmore, John G. Grubb, Jr., William G. McDaniel,* for appellant.

*King & Spalding, Charles M. Shaffer, Jr., Nolan C. Leake,* for appellee.

WEBB, Judge, dissenting.

This appeal involves two separate transactions. In the first, on September 25, 1972, John K. Porter Co., Inc. signed a $10,000 note and security agreement granting to First Georgia Bank a security interest in certain lease commissions to be paid to Porter by M. D. Hodges Enterprises, Inc. This note and security agreement was renewed on four occasions before final payment on April 18, 1974, at which time it was returned to Porter marked "Paid."

In the second transaction, on September 21, 1973, and January 21, 1974, First Georgia advanced to Porter

two $15,000 loans, which were consolidated into a $30,000 note on April 29, 1974. When the loans were consolidated, an assignment of the Hodges commissions as collateral was written into the instrument, but Porter refused to sign until the assignment language was stricken. This indebtedness was also renewed several times, but has never been paid and is now in default.

During the renewal period for the first $10,000 note and agreement, but after extension of the two $15,000 loans, John K. Porter indicated to Cothran C. Graves, president of First Georgia Bank, that his company would attempt to assign the Hodges commissions to a third party to obtain funds for the repayment of the first note-agreement. When Graves made no objection, Porter assigned the Hodges commissions to Trust Company Bank to secure two loans totaling $43,000 and warranted to the Trust Company that they were unencumbered. On August 5, 1974, Trust Company filed a financing statement pursuant to the Uniform Commercial Code listing the Hodges commissions as collateral for these loans.

Other commissions which Porter assigned to First Georgia as collateral for the $30,000 consolidated loan failed to materialize. By letter dated May 10, 1976, attorneys for First Georgia notified Hodges that Porter was in default and that future Hodges commissions should be paid directly to First Georgia. On May 25 Hodges wrote First Georgia's counsel that Porter had assigned the Hodges commissions agreement to Trust Company Bank and that Hodges had made a lump sum settlement with Trust Company, paying it in full for any commissions owed to Porter. On that same date Ms. Jean Caldwell, loan officer for First Georgia, wrote Porter that "your Company has a $30,000 loan unsecured at our bank, and at this time the Bank would like to take an assignment of commissions on certain real estate contracts. . ."

After Porter defaulted in repayment of the $30,000 consolidated note, First Georgia instituted a collection suit, obtained a judgment for principal, interest and attorney fees, and demanded payment from Hodges on the commissions owed to Porter. Hodges refused, informing First Georgia that these commissions had already been

paid to Trust Company, to whom Porter was also in default, and First Georgia filed the instant suit. Summary judgment was granted to Hodges, and First Georgia appealed on the grounds that there were genuine issues of material fact, and that Hodges was not entitled to judgment as a matter of law.

On appeal in this court the majority reversed, holding that the evidence "does not demand a finding that [First Georgia] voluntarily released its interest in the commissions or otherwise waived its security interest or that there has been an accord and satisfaction. . ." [Majority opinion, p. 4]. I would affirm for two reasons.

1. First Georgia introduced no affidavits or evidence to contradict the actions or statements of its officers when it returned the $10,000 note-agreement to Porter marked "Paid." Nor was any evidence introduced to refute John Porter's sworn testimony that First Georgia had no objection to the assignment by Porter of the Hodges commissions. Yet, without one citation to portions of the record in substantiation of its claim, First Georgia insists that summary judgment was improper because there are genuine issues of material fact. In such circumstances we have insufficient cause to overturn the judgment of the trial court, since " 'The burden is always on the appellant in asserting error to show it affirmatively by the record.' " Rule 18 (c) (3), this court; *Smith v. Forrester,* 132 Ga. App. 426 (208 SE2d 199) (1974) and cits.; *Rambo v. Fulton Financial Corp.,* 144 Ga. App. 791 (1978).

2. In my view, First Georgia is estopped as a matter of law to assert any alleged security interest against Hodges because of its lack of commercial care in failing to file a UCC financing statement, and because it allowed Porter to assign the Hodges commissions to the Trust Company.

First Georgia relies on UCC § 109A-9—302 (1) (e) in defense of its failure to file a financing statement. The Georgia Code section, which is identical to the UCC,[1]

---

[1] "(1) A financing statement must be filed to perfect all security interests except the following: . . . (e) an assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the

exempts from normal filing requirements an assignment which does not transfer a "significant part" of the accounts of a debtor. The UCC Official Comment 5 recites that "The purpose of the subsection (1) (e) exemptions is to save from *ex post facto* invalidation casual or isolated assignments: some accounts receivable statutes have been so broadly drafted that all assignments, whatever their character or purpose, fall within their filing provisions. Under such statutes many assignments which no one would think of filing may be subject to invalidation. The subsection (1) (e) exemptions go to that type of assignment. *Any person who regularly takes assignments of any debtor's accounts should file.*" (Emphasis supplied.)

Other courts and authorities have consistently interpreted Section 9-302 (1) (e) to disallow the exemption to ordinary commercial financings, and financial institutions like First Georgia which regularly take account assignments have been unable to claim its protection. See, e.g., Architectural Woods, Inc. v. State, 88 Wash. 2d 406 (562 P2d 248) (1977); E. Turgeon Const. Co. v. Elhatton Plumbing &c. Co., 110 R. I. 303 (292 A2d 230) (1972); Abramson v. Printer's Bindery, Inc., 440 SW2d 326 (Tex. Civ. App. 1969); Coogan, Hogan & Vagts, Secured Transactions under U.C.C. § 10.03 [8] at p. 1087 (1974 and 1977 Supp.). I think this interpretation is correct.

First Georgia regularly takes collateral assignments of accounts. Porter's assignment of the Hodges commissions did not occur in a "casual or isolated" transaction, but in a regular commercial financing and the commissions were significant in amount. Given the ease with which an account filing may be effected and its importance in affording notice to third-party creditors, account creditors should be encouraged to file in every instance by construing the filing exemption only to protect assignments taken outside of regular financings "which no one would think of filing."

_____

same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor. . ." Code Ann. § 109A-9—302 (1) (e).

Had First Georgia provided the required filing notice to Trust Company and other creditors this dispute could have been avoided. Trust Company did all it could; it obtained a warranty from Porter, given in good faith, that there were no security interests, and it filed a financing statement. Thus First Georgia is now estopped to argue policy considerations in an attempt to assert a priority security interest. "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." Code § 37-113; *McDonald v. Peoples Auto. Loan &c. Corp.*, 115 Ga. App. 483 (154 SE2d 886) (1967). I would affirm the grant of summary judgment.