In re Calvin J. BARRINGTON, Faye Ellen Barrington, d/b/a Barrington Dairy Farms, Debtors.

Calvin J. BARRINGTON and his wife, Faye Ellen Barrington, d/b/a Barrington Dairy Farms, Plaintiffs,

v.

FARMERS' HOME ADMINISTRATION, an agency of the United States Government; Farmers' Cooperative of Live Oak, Inc.; North Florida Production Credit Association; Chester A. Melvin; Federal Land Bank of Columbia; B.K. Sheffield; Agristor Credit Corp., a/k/a Agristor Leasing; and Upper Florida Milk Producers Association, Defendants.

Bankruptcy No. 83–419–BK–J–GP.
Adv. No. 83–334.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 20, 1983.

Andrew J. Decker, III, Live Oak, Fla., for plaintiffs.

E.J. Johnson, III, Jacksonville, Fla., for defendant Agristor Credit Corp.

Wallace McCormick, Live Oak, Fla., for Farmers' Home Admin.

Sam Weeks, Live Oak, Fla., for Farmers' Co-op. of Live Oak.

Charles Thomas, Live Oak, Fla., for North Florida Production Credit Ass'n and Federal Land Bank of Columbia.

Charles W. Grant, Jacksonville, Fla., for B.K. Sheffield.

Augusta A. Quesada, Jr., Jacksonville, Fla., for Upper Florida Milk Producers Ass'n.

Dorothea Beane, Jacksonville, Fla., for U.S.

## MEMORANDUM DECISION

GEORGE L. PROCTOR, Bankruptcy Judge.

On October 8, 1981, Calvin Barrington, one of the plaintiffs in this turnover action, and a debtor-in-possession under Chapter 11 of the Bankruptcy Code, executed a writing authorizing and directing defendant, Upper Florida Milk Producers Association (which regularly purchased milk products from Barrington's dairy farm) to pay $1,724.57 per month of the funds owing by Milk Producers to him, to Agristor Credit Corporation, the only defendant whose interests are addressed in this decision. It is undisputed that it was the understanding of Barrington and Agristor that the assignment, which was to run for seven years, was made as a method of payment by Barrington for a Harvestore, an item of farm equipment. It is further undisputed that Agristor suggested the assignment as its preferred means of payment and that while Agristor retained a security interest in the Harvestore, there was no security agreement or filing of a financing statement with respect to the milk check assignment.

The issues before us, and upon which testimony was taken by this Court on July 28, 1983, are (1) whether Agristor took a security interest recognized under Florida law in the milk check assignment, and (2) if such an interest was indeed created, whether Agristor's failure to file a financing statement renders it unperfected and thus inferior to plaintiff's interest pursuant to 11 U.S.C. § 544.

F.S. 679.9–102 extends the coverage of Article Nine of the Uniform Commercia Code (U.C.C.) as adopted in Florida:

(1)(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattle paper, accounts or contract rights.

The first question is whether the transaction before us is within the coverage of Article Nine, i.e., whether the parties intended the creation of a security interest in the assignment of accounts. Clearly, the statute does not require the existence of a security agreement *per se*. It is the plaintiff's position that he understood there to be a retained security interest in the Harvestore itself, but that the milk check assignment (which amounted to 2.5367 percent of his monthly milk check at the time of this assignment) was merely a device for mutual convenience to assure timely automatic payments to the seller. (Transcript, July 28 hearing, p. 5.) However the instrument (Defendant's Exhibit B) suggests otherwise:

It is understood and agreed to that this assignment is to continue in effect as long as any amount remains unpaid on my indebtedness or as long as I as one of your producers have any money coming to me.

Upper Florida Milk Producers Association was the entity which routinely issued Barrington's milk checks and through which the assignment was made. Upper Florida also supplied the assignment form which Barrington signed.

Thus, the terms of this instrument, to which Barrington was a party, contradict any suggestion by him that it was understood merely to be an arrangement for assuring timely payment to Agristor, to be continued only so long as it was satisfactory to all. Further damage is done to Barrington's version of the nature of the assignment by the final paragraph, which says that in the event of a dispute between Barrington and Agristor as to the proper distribution of the funds, Upper Florida would have the right to bring an interpleader action to determine its appropriate course of conduct, again indicating that Barrington had no unilateral right to revoke the assignment. U.C.C. 9–102 does not require that the creation of a security interest be the sole intention of the parties to any transaction, so long as it is one intended result. Clearly, the assignment instrument creates in the assignee a specific right to milk check proceeds over and above a general right to payment from Barrington's funds.

Under the facts before us, we believe the language of the assignment instrument is the best and most reliable indicator of Barrington's understanding and intention. It would have simplified this Court's role as fact finder if Agristor had put on testimony as to its intention in requesting and accepting the assignment of accounts. Still, it is a sufficiently reasonable inference that a commercial lender chooses the form of any given transaction in order to put itself in the best possible position, that Agristor's failure to produce evidence as to its intention does not give rise to any inference tending to negate a finding based on Agristor's actions and the language in the assignment instrument, that Agristor, as well as Barrington, intended the creation of a security interest.

Agristor argues that not only was a security interest created through the assignment, but that it falls within the exception set out at F.S. 679.9–302(1)(a) to the general requirement that a financing statement be filed to perfect security interests. This exception exempts from the necessity of filing:

> An assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignees transfer a significant part of outstanding accounts or contract rights of the assignor.

There is no statutory definition of "significant part." As the leading case *In re Hollis Knight Co.*, 605 F.2d 397 (8th Cir. 1979) points out, the courts have taken two distinct, and in terms of outcome, frequently disparate approaches to its construction: the "percentage" test, and the "casual and isolated transaction" test.

The former, espoused most notably in *Standard Lumber Company v. Chamber Frames, Inc.*, 317 F.Supp. 837 (E.D.Ark. 1970) and *In re Boughner*, 8 U.C.C.Rep. 144 (Ref.W.D.Mich.1970) looks to the size of the assignment in relation to all of the assignor's outstanding accounts. There does not appear to be any overwhelming concensus as to what figure represents a cutoff between "significant" and "insignificant."

The essence of the "casual and isolated" test is that if, upon examining the circumstances surrounding a transaction, the court finds that,

> ... the transaction was not part of a regular course of commercial financing, it will not require filing. The underlying rationale behind the test appears to be the conclusion that it would not be unreasonable to require a secured creditor to file if he regularly takes assignments of a debtor's accounts, but it would be unreasonable if this was not a usual practice.

*Id.* at 401.

Comment 5 to U.C.C. 9–302, which is the apparent origin of the "casual and isolated" test, and which the language, *supra,* from *Knight* is intended to amplify, says broadly, "any person who regularly takes assignments of any debtor's accounts should file."

We find no Florida decisions tending to indicate that the Florida courts have adopted any position on this matter; hence, we must determine which approach seems a sounder interpretation of U.C.C. 9–302(1)(e).

While Professors White and Summers urge the adoption of the percentage approach on the ground that if enough courts tackle the question of what percentage is significant and publish their results, a working concensus as to where the line of demarcation between "significant" and "insignificant" is drawn, *See* White and Summers, *Uniform Commercial Code,* § 23–8, our survey of the cases convinces us that no such test of certain application yet exists. In the absence of an agreed upon minimum "significant" percentage, it seems clear that the "casual and isolated" test provides the greater certainty of result for courts, and, more important, the greater predictive power for parties engaged in secured transactions: the adoption of the rule tells commercial lenders that they fail to file at their peril and at the same time does not penalize a casual one-time lender who, in genuine innocence, accepts an assignment of over a certain percentage of a business' accounts. Such an approach also avoids arbitrary determinations which might arise when a per-

centage of accounts which is insignificant for most kinds of businesses or under most circumstances is in fact significant in a given situation, or vice versa. Adoption of the "casual and isolated" test tells commercial lenders that they assume the risk of failure to file financing statements respecting assignments of accounts in which they wish to preserve a security interest, and that they cannot avoid filing respecting a substantial security interest by extending the payment schedule, causing monthly payments to fall below the point of "significance."

 Agristor's failure to file does not invalidate Barrington's otherwise valid assignment, it merely leaves Agristor's security interest unperfected. It is thus our finding that Agristor, Inc.'s, interest in the subject funds is inferior to that of plaintiffs' as debtor-in-possession, and that Upper Florida Milk Producers Association, Inc., should be directed to pay to the plaintiffs monies which they have held pending determination of this issue.

A judgment in accordance with this Opinion has been separately entered this day.