## In re KLEIN GLASS & MIRROR, INC.

### KLEIN GLASS & MIRROR, INC., Plaintiff,

v.

### TEMPGLASS SOUTHERN, INC., Defendant.

**Bankruptcy No. 89–08473–H2–11.
Adv. No. 91–4498.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Nov. 17, 1992.

Raymond C. Kerr, Pope, Shoemaker, Selwyn, Kerr & De Nisco, Houston, TX, for plaintiff.

Matthew M. Julius, Adair, Morris, Julius & Osborn, P.C., Dallas, TX, for defendant.

**MEMORANDUM OPINION CONCERN-ING EXEMPTION FROM FILING TO PERFECT A SECURITY INTER-EST IN ACCOUNTS PURSUANT TO TEX.BUS. & COM.CODE § 9.302(a)(5)**

RANDOLPH F. WHELESS, Jr., Chief Judge.

On August 8, 1991, Klein Glass & Mirror, Inc., ("Debtor" or "Klein") initiated the above-styled adversary proceeding. By its complaint, Klein Glass seeks to void and recover a transfer of property of the estate under the provisions of 11 U.S.C. § 547 and § 544(a).

The only issue remaining in this adversary proceeding is whether a secured party must file a financing statement in order to perfect an assignment of accounts under

Texas Business & Commerce Code ("TBCC") § 9.302(a)(5).

As discussed in this memorandum opinion, this Court finds that 1) the assignment of the subject account constitutes a substantial portion of the Debtor's accounts and that 2) in all other aspects the transaction was "casual and isolated". This Court is of the opinion that, at a minimum, to be exempt from the filing requirement pursuant to TBCC § 9.302(a)(5), an assignment of accounts must *not* constitute a substantial portion of the Debtor's accounts. Thus, to be perfected, this assignment was required to be filed (noticed) of record. It wasn't. The transfer constituted an avoidable preference.

### BACKGROUND

The relevant facts in this case are as follows.

In May, 1989, Klein executed a promissory note in favor of Tempglass Southern, Inc. ("Tempglass") and entered into a "Settlement Agreement, Mutual Release and Assignment" ("Settlement Agreement") with Tempglass. The note and Settlement Agreement were entered into as part of a negotiated settlement of a state civil suit ("Lawsuit") which was initiated by Tempglass for collection on an open account. It is apparent from the written agreement which addresses various legal formalities such as the relinquishment of all future claims and rights to bring suit arising out of such claims that the parties were not without legal advice in entering into this settlement.

Pursuant to the Settlement Agreement, Klein assigned a certain account to Tempglass as security for the note. The amount of the account assigned was $40,000.00. At the time of the assignment, the Debtor had 78 accounts receivable which aggregated $90,614.51 in dollar amount. The account assigned constituted over 40 percent of the Debtor's outstanding accounts.

Tempglass did not record a UCC–1 Financing Statement regarding the assignment.

Neither Tempglass nor Klein is in the business of commercial financing. Furthermore, Tempglass does not regularly take assignments of any debtor's accounts as part of its business and had never taken an assignment from Klein prior to this transaction. In this respect the assignment was "casual and isolated", as noted above. In all respects, it was an "isolated" transaction, at least as far as Tempglass is concerned.

### DISCUSSION

#### 1. Parties' Arguments

Klein argues that Tempglass has an unperfected security interest in the assigned account as a result of its failing to file a financing statement pursuant to TBCC § 9.302. Applying a literal reading of the statute, Klein further argues that the assignment constitutes a substantial portion of the Debtor's accounts and, thus, does not satisfy the exception under § 9.302(a)(5).

Relying upon the comments to TBCC § 9.302(a)(5), Tempglass contends that the assignment satisfies the "casual and isolated" test applied under this subsection and, thus, is exempt from the filing requirement.

#### 2. Texas Business & Commerce Code § 9.302(a)(5)

Chapter 9 (Secured Transactions; Sales of Accounts and Chattel Paper) of the Texas Uniform Commercial Code applies to an outright assignment of accounts as well as an assignment intended to create a security interest. Tex.Bus. & Com.Code Ann. § 9.102 (Tex.UCC) (Vernon 1991).

Section 9.302 of the Texas Business & Commerce Code provides in pertinent part:

(a) A financing statement must be filed to perfect all security interests except the following:

. . . . . .

(5) an assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer *a significant part of the outstanding accounts* of the assignor;
. . . . (Emphasis added)

■ In interpreting a statute, the following rules of statutory construction apply:

1. "The starting point in statutory interpretation is the language [of the statute] itself." *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986).

2. "[W]e assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Id.* at 604, 106 S.Ct. at 3120.

3. "[W]ords in statutes should not be discarded as "meaningless" and "surplusage" when [the legislature] specifically and expressly included them...." *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972).

4. "[W]hen ... the terms of a statute [are] unambiguous, judicial inquiry is complete, except 'in "rare and exceptional circumstances." ' " *United States v. James*, 478 U.S. at 606, 106 S.Ct. at 3121 (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)).

5. "In the absence of a 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.' " *Id.* 478 U.S. at 606, 106 S.Ct. at 3121 (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

6. "[E]ven in its secondary role legislative history must be used 'cautiously.' " *Ali Boureslan v. ARAMCO*, 857 F.2d 1014, 1018 (5th Cir.1988), *aff'd, EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991).

7. Upon first impression, a statute may appear unambiguous. Legislative history may prove otherwise. *Herren v. United States*, 317 F.Supp. 1198, 1203 (S.D.Tex.1970), *aff'd*, 443 F.2d 1363 (5th Cir.1971).

*The Plain Language of § 9.302(a)(5)*

■ According to the plain language of § 9.302(a)(5), an assignment of accounts is exempt from the filing requirement only if it constitutes less than a substantial portion of a debtor's accounts, referred to as the "percentage test".

■ Under the facts here, the account assigned was over 40 percent of the Debtor's outstanding accounts at the time of the assignment. This court concludes that 40 percent is more than a substantial portion of the Debtor's accounts. As a result, a financing statement needed to be filed to perfect the assignment.

*Uniform Commercial Code Comment to § 9.302(a)(5)*

■ The comment to section 9.302(a)(5) [1] states:

> The purpose of the subsection [ (a)(5) ] exemption is to save from *ex post facto* invalidation casual or isolated assignments: some accounts receivable statutes were so broadly drafted that all assignments, whatever their character or purpose, fell within their filing provisions. Under such statutes many assignments which no one would think of filing might have been subject to invalidation. The paragraph [ (a)(5) ] exemption goes to that type of assignment. Any person who regularly takes assignments of any debtor's accounts should file....

Tex.Bus. & Com.Code Ann. § 9.302 (Tex. UCC) (Vernon 1991).

If paragraph (a)(5) were construed to protect those who are not in the business of commercial financing no matter how substantial the assignment is in amount, then Tempglass satisfies this "casual and isolated" test. However, if all the surrounding circumstances of the assignment are to be considered, the transaction certainly was not "casual" in another sense of the term. It appears that lawyers were involved in the Settlement Agreement wherein the assignment was made. Fur-

---

1. The Texas legislature renumbered the Uniform Commercial Code's version of section 9.302. All references to UCC § 9.302(1)(e) are changed to § 9.302(a)(5) to conform to the Texas statute.

thermore, if the proportion of the accounts assigned were an element of the "casual and isolated" test as suggested in *In re First City Mortgage Co.,* 69 B.R. 765 (Bankr.N.D.Tex.1986), Tempglass would not satisfy this "casual and isolated" test.

Citing this court to *Abramson v. Printer's Bindery Inc.,* 440 S.W.2d 326 (Tex.Civ. App.—Dallas 1969, no writ), Tempglass contends that in determining whether the exception to filing applies the court must *only* inquire into whether the assignment was "casual or isolated". *See also In re Barrington,* 34 B.R. 55 (Bankr.M.D.Fla. 1983); *Architectural Woods Inc. v. State,* 88 Wash.2d 406, 562 P.2d 248 (1977). In *Abramson* the trial court found as a matter of fact that the plaintiff had failed to establish that the assignment was of a significant portion of the debtor's accounts receivable. Thus, the comments of the Texas Court of Civil Appeals must be taken in light of this finding. This Court declines to interpret *Abramson* as holding that only the "casual and isolated" test is applicable and that a court does not look to the relative portion of the accounts assigned.

Because the phrase "substantial part" as used in § 9.302(a)(5) is somewhat subjective, it can be argued that the statute is ambiguous. Nevertheless, any such "ambiguity" would relate only to the issue of what percentage of the accounts would constitute a "substantial part" of the debtor's accounts receivable. The comments citing "casual or isolated" do not assist in defining the phrase "substantial part", in this Court's opinion.

In light of the plain language of the statute, it seems imperative that the trial court consider the proportion of accounts assigned as part of a "casual and isolated" analysis as suggested in *First City Mortgage* or it must be considered as an independent test. To do otherwise would do violence to the ordinary meaning of the words of the statute. If the legislature had intended that all "casual or isolated" transactions regardless of the proportion of accounts assigned be exempt from the filing requirement, it could have, and no doubt would have, stated so in the statute.

Further, unless the proportion of accounts assigned is considered, a debtor could assign 100 percent of its accounts receivable in a so-called "casual and isolated" transaction whereby the secured party need not give notice by recording to other creditors. Such an interpretation would be totally inconsistent with the plain meaning of the language of the statute.

At the very least the statute requires that a financing statement be filed if the assignment of accounts is a substantial portion of the debtors accounts receivable. *Davidson v. Union Nat'l Bank of Little Rock (In re B. Hollis Knight Co.),* 605 F.2d 397 (8th Cir.1979) (concluding that both the percentage test and the casual and isolated test must be met); *In re Tri-County Materials, Inc.,* 114 B.R. 160 (Bankr.C.D.Ill.1990) (same).

This Court holds that an assignment of 40 percent of the Debtor's outstanding accounts receivable is a substantial part.

Under the facts here this Court need not decide whether an assignment of less than a substantial part must satisfy the "casual and isolated" test.

Tempglass has not filed the required financing statement and thus its security interest is not perfected.

## CONCLUSION

For the reasons stated this Court finds that the transaction constitutes an avoidable preference.

Counsel for the Debtor is directed to present a judgment consistent with this opinion.