**A. E. RICHARDSON, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. PB 72-C-5.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

Jan. 22, 1973.

William R. Holland, Bridges, Young, Matthews & Davis, Pine Bluff, Ark., Rupert G. Usrey, Eiser & Usrey, Oregon, Mo., for plaintiff.

Richard M. Pence, Jr., Asst. U. S. Atty., W. H. Dillahunty, U. S. Atty., Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

The plaintiff brings this action to enjoin a scheduled sale under levy and for a return of the property seized. The property involved is identified as a 1969 Mack Tractor Serial No. F785ST 4649. It was made up from or put together largely with salvage parts of the original Mack tractor with the same serial number which had been wrecked and substantially damaged by an automotive accident.

The complaint is brought under the provisions of 28 U.S.C.A. § 1346(e) and 26 U.S.C.A. § 7426. The defendant, United States of America, filed a levy on the property pursuant to a federal tax lien perfected by the government April 14, 1970, in the office of the Circuit Clerk of Jefferson County, Arkansas, against Silas R. Kincaid. The plaintiff seeks to enjoin the defendant from further proceedings in the sale of the property and claims a prior security interest filed in the office of the Circuit Clerk of Jefferson County, Arkansas, on April 13, 1970, and with the Secretary of State in Little Rock, Arkansas, on April 15, 1970.

The defendant filed a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure which the Court denied in its order entered May 19, 1972, as a part of this proceeding.

Subsequently, on June 23, 1972, a motion was filed by the defendant, United States of America, to dismiss or for summary judgment. The government's motion was based on the government's contention that the complaint failed to state a claim upon which relief could be granted and the court was without jurisdiction over the subject matter. In addition, the defendant insisted that, from the pleadings and attachments, and all matters filed in the case, it is clear that there is no genuine issue as to any material fact and the defendant is entitled to a judgment as a matter of law.

The Court, in its order entered January 4, 1973, denied the government's motion to dismiss or in the alternative for a summary judgment. The order is included herein by reference and made a part of this memorandum.

In the interim the parties entered into stipulations as to the basic facts which were filed on November 14, 1972. The stipulations are made a part of this memorandum by reference as if included in toto.

From the record in the case, including the proceedings of regular pre-trial schedules on April 28, 1972, and November 16, 1972, the Court concluded there were controverted issues and regularly scheduled the case for trial to the Court January 15, 1973.

At the commencement of the trial of the case counsel for the plaintiff and counsel for the government made a brief statement as to their respective contention and what they expected the witnesses to testify. Several witnesses testified and from the record, stipulations of the parties, and ore tenus testimony, the Court makes its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

In view of the diverse issues in the case and the conflicting positions of the parties the Court is of the opinion that a brief statement summarizing the facts would be helpful to an understanding of the issues, which the Court must determine.

In July 1969 Silas Kincaid, Pine Bluff, Arkansas, purchased a new 1969 Mack Tractor, Vehicle Identification No. F785ST 4649, Engine No. T675–4L–6376. The Arkansas Department of Revenue, Motor Vehicle Division, issued Certificate of Title No. 6432758 for the tractor to Silas or Eva Kincaid October 9, 1969, showing a lien in favor of Associates Financial Services Co., Inc.

In December 1969 the tractor was wrecked in an accident and substantially damaged. In order to repair the damaged tractor to meet the requirements of the insurance and standards for a tractor of this type, it was necessary to install a new cab, front axle and chassis, and a new engine consisting of an engine block and crank. The original transmission, rear axle and rear parts were not damaged and remained as a part of the vehicle when restored to operating condition. The newly installed parts necessary for repair is called or referred to as a "Glider Kit No. F–1217". The repaired vehicle was issued a duplicate Identification No. F785ST 4649, Glider Kit No. F–1217.

On January 13, 1970, Silas Kincaid and Associates Financial Services Co., Inc., entered into an agreement whereby the repaired tractor with the new vehicle identification was substituted in the place of the original tractor purchased in July 1969. The repaired tractor is not involved in this proceeding.

From the testimony it is revealed that Silas Kincaid purchased the salvage parts of the wrecked tractor from the insurance company. These were the damaged parts from the wrecked tractor that could not be used in its repair.

Kincaid used the salvaged parts consisting of the cab, front axle and chassis, engine, consisting of engine block and crank, together with other parts purchased, some new and some from salvage from other vehicles to rebuild another tractor which is the subject of this litigation.

The government admits that Silas Kincaid did rebuild with salvaged parts another tractor, which was eventually assigned Vehicle Identification No. ARK T–3369. The engine block and crank salvaged from the wrecked tractor, Vehicle Identification No. F785ST 4649, was one of the parts used by Kincaid in building the new tractor.

It is stipulated that on April 7, 1970, Silas Kincaid d/b/a Kincaid Trucking Company, borrowed $10,000 from the First State Bank of Forest City, Missouri. The undisputed facts from testimony of the plaintiff was that prior to that time Silas Kincaid had obtained approximately $5,000 from the First State Bank of Forest City, Missouri, which he, the plaintiff, guaranteed. Further, to obtain funds to purchase the needed parts for the tractor Kincaid was to build, using the salvaged parts as described, an additional $5,000 was needed.

Consequently, the plaintiff, A. E. Richardson, arranged for the First State Bank of Forest City, Missouri, to advance Kincaid the additional $5,000 for which Kincaid gave a note in the sum of $10,000 to cover the entire sum of his obligation to the bank. The plaintiff guaranteed the entire loan and obligated himself to the bank for payment of the note. At this time Kincaid had not put together or built the new tractor from the salvaged parts or purchased the other parts necessary to put it together. Nevertheless, as security for the loan to the bank, Kincaid executed a security agreement on a "1969 Mack Truck #F785 ST4649". The security agreement referred to as a financing statement describing a "1969 Mack Diesel Tractor, Serial No. F785 ST4649" was filed with the Circuit Clerk of Jefferson County, Arkansas, on April 13, 1970, and the Secretary of State, Little Rock, Arkansas, on April 15, 1970. On May 29, 1970, the First State Bank of Forest City, Missouri, assigned the promissory note and security agreement to the plaintiff, A. E. Richardson.

A federal tax lien was filed with the Circuit Clerk of Jefferson County, Arkansas, on April 14, 1970, against Silas

Kincaid in the sum of $16,624.88 by the government.' The federal tax lien is notice of and security for the assessed federal taxes described therein. Additional federal tax liens against Kincaid were filed for record in the office of the Circuit Clerk of Jefferson County in June and July, 1971.

Subsequently, the tractor in question was put together, built from the salvage parts and new and other salvaged parts purchased, as an operating vehicle. Kincaid attempted to obtain a title registration for this rebuilt tractor. Experiencing difficulty he commenced an action against the Arkansas Commissioner of Revenues in the Chancery Court of Jefferson County to quiet title to the described vehicle reconstructed from the combination of parts from other vehicles. Neither the plaintiff, Richardson, or the United States were parties to this action. Their respective interests were not disclosed to the Chancery Court. On November 6, 1971, the Chancery Court entered an order directing the Commissioner of Revenues to issue a certificate of title "free of liens" to Silas Kincaid for the 1969 reconstructed tractor. A Certificate of Title No. 7372066 was issued November 10, 1971, and Vehicle Identification No. ARK T–3369 was assigned to the tractor. The Certificate of Title does not show any liens. On December 29, 1971, Silas Kincaid assigned the certificate of title for the tractor to the plaintiff, Richardson.

At the time Kincaid assigned the certificate of title to the plaintiff the tractor was under seizure by the Jefferson County Sheriff. This action was the result of a writ of execution upon a judgment against Kincaid and in favor of Bandag Corporation. On December 22, 1971, an agent of the Internal Revenue Service directed a letter to the Sheriff advising of their intention to seize the truck at the time of the sale and directed the Sheriff to announce their intentions. In the interim the plaintiff, following a conference with the agents of the Internal Revenue Service on December 28, 1971, arranged to settle the judgment of Bandag and obtain the release of the truck. There was no sale January 4, 1972. The agents of the Internal Revenue Service proceeded with their seizure pursuant to the federal tax lien and took charge of the involved truck, giving rise to this litigation. The government again renewed its motion to dismiss on the basis of jurisdiction and that the plaintiff fails to state a claim upon which relief may be granted.

Although the Court has passed on both these contentions in previous orders, the Court further concludes that the cases cited heretofore by the government on this issue are distinguishable and not applicable. As heretofore stated, the involvements of the wrecked vehicle, the original Mack Tractor purchased in 1969, rebuilding of a completely new tractor, the loan and obligation of Kincaid to the First State Bank of Forest City, Missouri, and the government's tax lien complicated the questions involved to such an extent that the conflicting claims could be determined only from a hearing to develop the facts. Consequently, the government's contention on the wrongful levy issue had to be determined on the facts as they developed over a period of time. Consequently, the Court's previous decisions on the question of jurisdiction are established from the record in the case.

The government further contends that the identification in the security agreement Kincaid gave to the First State Bank of Forest City, Missouri, was insufficient. The Court cannot agree.

Arkansas adopted the Uniform Commercial Code in 1961. The question of identification upon which the Court relies is clearly announced in a recent opinion entered by The Honorable M. C. Matthes, Chief Judge of our Eighth Circuit Court of Appeals, on January 4, 1973, United States of America v. First National Bank in Ogallala, Nebraska, 470 F.2d 944.

There the Court of Appeals considered the question of identification under the UCC of the State of Nebraska, identical

to the UCC adopted by the State of Arkansas.[1] In applying UCC §§ 9–110 and 9–203(1)·(b) the Court quoted the language of the sections and comments, and held:

"[W]e are not convinced that the requirement in Section 9–203, supra, that the collateral be described, is a device for minimizing the amount of collateral a creditor can secure. That may be a laudable goal, but it is not encompassed by § 9–110. As the Comment to that section makes clear, the purpose of a description of collateral in a security agreement is only to evidence the agreement of the parties and therefore it need only 'make possible the identification of the thing described'."

Chief Judge Matthes further referred to a decision of the Minnesota court on the identical section as follows:

"If the debtor himself is willing to give a creditor a security interest in everything he owns, the code does not prevent it, whether his action is prudent or not. . . .

"The description of the collateral [here] . . . did what it was meant to do—namely it included all of the goods then owned, or to be owned in the future, by the debtor. . . . The parties sought to create a security interest in substantially all of the debtor's property. That is what was stated and that is what was meant. The parties did not particularize any further, and the statute does not require it." Citing cases.

In the instant case the identification of the property included in the security interest agreement as security for the loan assigned by Mr. Kincaid to the First State Bank of Forest City, Missouri,· is as follows: "A 1969 Mack Truck #F785 ST 4649". (Exh. 2 to Stipulation).

The financing statement ·which the First State Bank of Forest City, Missouri, transmitted to Kincaid for filing and which was filed by him with the Circuit Clerk of Jefferson County, Arkansas, on April 13, 1970, and with the Secretary of State of April 15, 1970, contained the following identification "1969 Mack Diesel Tractor Serial No. F785 ST 4649". (Exh. 3 and 3(a) to Stipulation)

The Court concludes that the description of the collateral was sufficiently described to satisfy the Arkansas Statute, UCC §§ 85–9–110 and 85–9–203(1)·(b).

The threshold question for determination of this involved proceeding is whether the Uniform Commercial Code of Arkansas has been satisfied and the security interest of the bank perfected by proper and timely filing as required. Ark.Stat.Ann. § 85–9–401(1)(c) (1961) requires the security interest be filed both centrally with the Secretary of State and locally with the Clerk of the Circuit Court.

As has already been stated, the security interest of the bank was filed locally with the Clerk of the Circuit Court on April ·13, 1970, and centrally ·with the Secretary of State on April 15, 1970. The government filed its tax lien with the Clerk of the Circuit Court on April 14.

The testimony revealed that with the consummation of the loan note and security agreement between Kincaid and the First State Bank of Forest City, ·Missouri, on April 7, 1970, the bank sent the instrument of security, two copies, to Kincaid for him to file the instrument centrally with the Secretary of State and locally with the Circuit Clerk. Mr. Kincaid and Mrs. Kincaid testified that they informed agents of the Internal Revenue Department of the security interest sometime between April 7 and

---

1. In footnote 3 of the opinion by Chief Judge Matthes it is stated that UCC "actually is national law, cf. In re Yale Express System, Inc., 370 F.2d 433, 437 (2nd Cir. 1966)".

April 14. They could not be specific as to the date or just when or where the information was conveyed to the revenue agent in order that the government had knowledge of the bank's security interest.

It is well established that under the law the plaintiff has the burden of establishing the facts and his claim in this proceeding. The cases are legend on this rule of law.

The agent first assigned the Kincaid file for collection of delinquent taxes made his first contact with Mrs. Kincaid by telephone on April 8, 1970. He requested that Mr. Kincaid return his call. On April 9 Mrs. Kincaid returned the call to the agent and advised that Mr. Kincaid had to leave early to meet his schedule. The agent then required the Kincaids to come to his office in Little Rock on April 13, 1970, and bring a financial statement as required by law in connection with his delinquent taxes. The agent testified from his work sheet records of these transactions, which he recorded at the time. He further testified this was the first personal meeting and acquaintance he had with the Kincaids. He advised Mr. Kincaid that the following day, April 14, he would file a tax lien with the Clerk of the Circuit Court in Pine Bluff, Arkansas. The testimony fails to reveal that Mr. Kincaid advised the agent that he had already filed or would file the security interest of the First State Bank on that day, April 13. Neither did Mr. Kincaid explain why he failed to file with the Secretary of State until April 15, 1970.

Our Eighth Circuit Court of Appeals decided this question of compliance with the filing requirements of the Uniform Commercial Code, Ark.Stat.Ann. § 85–9–401(1)(c), in United States v. Trigg, 465 F.2d 1264 (1972). The threshold question there, as in the instant case, where the federal government asserts its tax lien, is whether or not the filing requirements have been met. At page 1268, the Circuit Court of Appeals stated:

". . . The UCC requires holders of certain security interests in property to record their interest in order to protect it from the claims of third parties. . . .

"Unless the security interest is perfected by filing, third party creditors may gain rights against the collateral. See Ark.Stat.Ann. § 85–9–301. The UCC subordinates the right of a holder of an unperfected security interest to the right of a 'person who becomes a lien creditor without knowledge of the security interest * * *.' Ark. Stat.Ann. § 85–9–301(1)(b). The term 'lien creditor' is defined as follows:

"A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like * * * [Ark. Stat.Ann. § 85–9–301(3)]."

In the instant case the United States qualifies as a lien creditor under the definition of the term.

In United States v. Trigg, supra, the Court stated, at page 1269:

". . . the UCC makes unperfected interests vulnerable to the claims of third parties. . . . The UCC plainly provides that a lien creditor, such as the United States, may reach property securing an unperfected interest. . . ."

Ark.Stat.Ann. § 85–9–301(1)(b) provides that an unperfected security interest is subordinate to the rights of * * * a person who becomes a lien creditor *without knowledge of the security interest and before it is perfected.* [Emphasis supplied]

Also, at page 1269, in *Trigg* the Eighth Circuit Court stated as follows:

"Under the basic federal priority standard, 'first in time is first in right,' a federal tax lien takes priority over a state-created lien unless the state lien is specific and perfected in the federal sense before the federal

tax lien arises. United States v. Equitable Life Assurance Society of United States, supra, 384 U.S. [323] at 327, 86 S.Ct. 1561 [16 L.Ed.2d 593]. With certain statutory exceptions, see 26 U.S.C. § 6323(a), a federal tax lien arises on the date of assessment. 26 U.S.C. § 6322; see United States v. Vermont, 377 U.S. 351, 353 n. 3, 84 S.Ct. 1267, 12 L.Ed. 2d 370 (1964). At the time the United States assessed the contractor's tax liability, the bank's security interest was not specific and perfected, in the federal sense, because filing was required to protect the security interest against third party creditors. Citing cases."

It is noted that the 1966 amendments to the Federal Tax Lien Statute expanded the classes of claims which are entitled to priority over federal tax liens. Holders of security interests are among those creditors who were granted added protection. Under 26 U.S.C. § 6323(a) a federal tax lien is not valid against the holder of a security interest until the tax lien is filed. It is quite clear that Congress extended the added protection only to holders of perfected security interests by defining a security interest as follows:

"The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth. [26 U.S.C. § 6323(h)(1)]

"See 26 U.S.C. § 6323(c)(1)·(B). As a result, holders of unperfected interests remain subject to the 'first in time is first in right,' priority standard. Under that standard, unperfected security interests are subordinate to a federal tax lien."

The Court concludes that since the plaintiff has the burden of proof in the case, from the testimony of witnesses no agent of the Internal Revenue Service had knowledge of the bank's security interest until after the government's tax lien was filed on April 14, 1970.

The Court further concludes that since the rule well established under the basic federal priority standard "first in time is first in right" that the filing of the government lien on April 14, 1970, has priority over the perfected interest of the bank which subsequently was assigned to the plaintiff. The First State Bank of Forest City, Missouri, failed to protect it's interest by complying with the statute in filing the security interest with the Secretary of State until after the government's tax lien was filed the preceding day.

The Court is of the opinion, therefore, that in this case the federal tax lien takes priority over the bank's security interest which is the interest of the plaintiff. As stated in *Trigg*, supra, had the bank properly filed it's security interest, the result would have been different under the present Federal Tax Lien Statute.

There are other questions presented by the parties in this case. In view of the Court's decision as expressed in this opinion, it would be unnecessary to reach the other issues.

It follows that the plaintiff's complaint to enjoin the defendant in this proceeding and order for return of the property to the plaintiff should be denied and the complaint dismissed.

An order will be entered accordingly.