The GEORGE W. ULTCH LUMBER COMPANY, Plaintiff,

v.

HALL PLASTERING, INC., and Mid-Continent National Bank, Defendants,

United States of America, Intervening Defendant and Claimant.

Civ. A. No. 75CV480-W-B.

United States District Court, W. D. Missouri, W. D.

Sept. 13, 1979.

FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER GRANTING MOTION OF UNITED STATES AND DENYING MOTION OF MID–CONTINENT NATIONAL BANK FOR SUMMARY JUDGMENT, AND ORDER DENYING MOTION OF STANFORD C. MADDEN FOR AN ATTORNEY'S LIEN

WILLIAM H. BECKER, Senior District Judge.

## INTRODUCTION

In this case the United States of America (United States), claiming to be a holder of a federal tax lien, and Mid-Continent National Bank (Bank), claiming to be an assignee of a contract right, have conflicting claims to a fund consisting of $6,141.94 deposited in the registry of this Court for ultimate distribution by judgment of this Court. In addition, Stanford C. Madden (Madden), counsel for Hall Plastering, Inc. (Hall), claims an attorney's lien against the fund.

The United States and Bank have each filed a motion for summary judgment. The parties agree to the material facts. Only questions of law, to be decided by this Court, remain.

## DECISIONS

For reasons stated hereinafter, the motion of the United States for summary judgment will be granted; the motion of Bank for summary judgment and the motion of Madden for an attorney's lien will be denied.

## PRELIMINARY FINDINGS OF FACT

This interpleader action is one of a series of actions begun in the Circuit Court of Jackson County, Missouri. The United States, intervening defendant in this action, removed this interpleader action to this Court as related hereinafter. The claim of the United States is based on recorded assessments for unpaid federal taxes for the

Stanford C. Madden, Kansas City, Mo., for defendant Hall Plastering, Inc.

Thomas A. Schwindt, Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for defendant Mid-Continent Nat. Bank.

E. Eugene Harrison, Asst. U. S. Atty., Kansas City, Mo., for intervening defendant and claimant United States of America.

years 1968 and 1969 described hereinafter. The only parties now remaining in this action are the United States, Bank, Hall and Hall's attorney, Madden.

The original state court action was entitled *The Geo. W. Ultch Lumber Company v. Jesse C. Hastings Construction Company, Hall Plastering, Inc. and United States Fidelity and Guaranty Company*, civil action No. 744431 in the Circuit Court of Jackson County, Missouri. In this state court civil action the plaintiff The Geo. W. Ultch Lumber Company (Ultch) sought relief because of the failure of Hall to pay for materials sold and delivered to Hall by the plaintiff Ultch, one of the materialmen of Hall. Later, this state court civil action No. 744431 was consolidated with a second state court civil action entitled *Mid-Continent National Bank v. Hall Plastering, Inc., William and Sharon Hall, Harry and Madge Taylor, and Jesse C. Hastings Construction Company*, civil action No. 736898, in the Circuit Court of Jackson County, Missouri, in which on February 14, 1972, the state court entered judgment for Bank and against Hall for damages in the amount of $20,223.89, which represented the unpaid amount of the loan by Bank to Hall. In state court civil action No. 736898 Bank recovered liquidated damages of $20,223.89 because Hastings Construction Company (Hastings) had failed to make the agreed payments to Bank in accordance with a loan agreement made by Hall and Bank and an assignment by Hall to Bank, described hereinafter (Stipulation, ¶¶ 20, 21; Cross Claim of Bank, ¶ 8). That judgment for damages in favor of Bank against Hall remains unsatisfied.

The United States intervened in state court civil action No. 744431, described above, and removed that action to this Court under §§ 1441, 1444, and 1446(b), Title 28, United States Code. This Court granted Bank leave to intervene in the removed action, dismissed the petition (complaint) of the plaintiff Ultch, and by interlocutory judgment discharged defendants Hastings and its surety United States Fidelity and Guaranty Company (U.S.F. & G.). Prior to its discharge Hastings paid into the registry of this Court $6,141.94,

which is the fund presently claimed by the United States and Bank and the subject of the attorney's lien claim of Madden.

## STIPULATED ADDITIONAL FACTS AND MOTIONS FOR SUMMARY JUDGMENT

The United States, Bank, Hall and Madden agree to the following material facts.

On May 27, 1968, Hastings entered into a contract with Northgate Theaters, Inc. (Stipulation, ¶ 1). In this contract Hastings agreed to make "alterations and additions" to the Towne Theatre, 1114 Main Street, Kansas City, Missouri (Stipulation, ¶¶ 1, 2). U.S.F. & G. was the surety on the performance bond of Hastings covering the Towne Theatre project. On June 12, 1968, Hall entered into a subcontract with Hastings to do plastering work at the Towne Theatre (Stipulation, ¶ 3). Specifically, Hall agreed to construct the following: drywall partitions, soundboard, insulation, rigid board insulation, suspended gypsum ceilings and sprayed-on acoustical finish. As stated above, on August 28, 1968, Hall obtained a loan from Bank and assigned to Bank, "its successors and assigns, to its and their own proper use and benefit all the Assignor's right, title and interest in and to all monies due or to become due from Hastings Construction Company under a certain contract dated June 12, 1968 between the Hall Plastering, Inc. and the said Hastings Construction Co. . . . " (Stipulation, ¶¶ 5, 6). On the same day, Bank gave Hastings written notice of the assignment, and Hastings acknowledged in writing the assignment (Stipulation, ¶¶ 7, 8). A financing statement concerning the assignment, however, was never filed of record (Stipulation, ¶ 9).

Hall failed to pay Federal Insurance Contribution Act (F.I.C.A.) and Federal Unemployment Tax Act (F.U.T.A.) taxes, owed by Hall, for the years 1968 and 1969. The Internal Revenue Service (IRS) made assessments for these unpaid taxes against Hall in 1969 and 1970. From November 3, 1969 to August 7, 1970, the IRS filed with the Recorder of Deeds of Jackson County,

Missouri, notices of federal tax liens against Hall totalling $37,611.68 for the unpaid F.I. C.A. and F.U.T.A. taxes (Stipulation, ¶¶ 10–18). On January 3, 1976, the United States refiled notices of these federal tax liens with the Recorder of Deeds of Jackson County, Missouri (Stipulation, ¶ 19).

On April 27, 1977, a "Motion of the United States of America for Summary Judgment" was filed in this Court. A "Motion of Mid-Continent National Bank for Summary Judgment" was filed in this Court on May 11, 1977. Hall, Bank, the United States and Madden filed a "Stipulation of Facts" on March 24, 1977, and a "Stipulation" on June 30, 1977. The latter "Stipulation" states that all claims to the fund are submitted for the decision of this Court upon the following: (1) claims of Bank, the United States, Hall and Madden; (2) the "Stipulation of Facts"; and (3) motions for summary judgment filed by Bank and the United States. On September 7, 1978, this Court requested the following additional information from the remaining parties:

1. The dollar amount of all of Hall's "accounts," as defined in § 400.9–106, RSMo, outstanding on August 28, 1968, and the maximum and minimum of such accounts of Hall during each month in 1968 from January to and including August, 1968;

2. The dollar amount of all of Hall's "contract rights," as defined in § 400.-9–106, RSMo, outstanding on August 28, 1968, and the maximum and minimum of such contract rights of Hall during each month in 1968 from January to and including August, 1968;

3. (a) The dollar amount payable to Hall as subcontractor for full performance of the subcontract entered into by Hall and Hastings on June 12, 1968, and

(b) the total dollar amount actually paid to Hall for performance of said subcontract;

4. The dollar amount of all of Hall's "accounts" outstanding on August 28, 1968, assigned to Bank, excluding the assignment of August 28, 1968, and the maximum and minimum of accounts assigned by Hall to Bank during each month in 1968 from January to and including August, 1968;

5. The dollar amount of all of Hall's "contract rights" outstanding on August 28, 1968, assigned to Bank, excluding the assignment of August 28, 1968, and the maximum and minimum of contract rights assigned by Hall to Bank during each month in 1968 from January to and including August, 1968; and

6. The dollar amount of *all* loans made by Bank from January 1 to August 31, 1968, computed on either a monthly or quarterly or total basis.

The material additional information provided in response to the request of the Court is discussed hereinafter.

## MOTIONS FOR SUMMARY JUDGMENT

I. THE ASSIGNMENT OF THE CONTRACT RIGHT BY HALL TO BANK IS SUBJECT TO ARTICLE 9, "UNIFORM COMMERCIAL CODE—SECURED TRANSACTIONS," §§ 400.9–101 *et seq.*, RSMo

Missouri law is the applicable state law in this action. The Uniform Commercial Code, as enacted in Missouri, is found in Chapter 400, RSMo. With certain exceptions, Article 9 thereof, *supra*, applies to any transaction which is intended to create a security interest[1] in personal property, including accounts[2] or contract rights,[3] and

---

1. § 400.1–201(37), RSMo, defines "security interest" as follows:

. . . an interest in personal property or fixtures which secures payment or performance of an obligation. . . .

2. § 400.9–106, RSMo, defines "account" as follows:

. . . any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper.

3. § 400.9–106, RSMo, defines "contract right" as follows:

to any sale of accounts or contract rights. § 400.9–102(1)(a), (b), RSMo. Article 9 applies to security interests created by contract including assignment. § 400.9–102(2), RSMo. The Uniform Commercial Code Comment to § 9–106 (§ 400.9–106, RSMo) explains that an "account" is "a right earned by performance, whether or not due and payable, the ordinary commercial account receivable." A "contract right" is described as "a right to be earned by future performance under an existing contract." Because Hall did not complete the work it had agreed to perform for Hastings in the subcontract dated June 12, 1968 until April 30, 1969 (Separate Answer and Cross Claim of Hall, Case No. 744431, ¶ 4 of the Cross Claim), it is concluded that the assignment of August 28, 1968, by Hall to Bank was the transfer of a contract right and not the transfer of an account. But whether the assignment transferred a contract right[4] or an account will not affect the priority of the claims asserted by the United States and Bank.

Further, whether the transaction was an assignment of the contract right as collateral for the loan or whether the contract right was sold will not affect the priority of those claims. The Uniform Commercial Code as enacted in Missouri, Chapter 400, RSMo, makes both types of transactions subject to Article 9. Such transactions may serve the financing function of providing current capital. Comment, *Assignment of Accounts and Contract Rights*, 1977 Utah L.Rev. 331, l.c. 332–333.

It is concluded that unless the assignment of the contract right by Hall to Bank was excluded from Article 9 by § 400.9–104(f),

RSMo,[5] the assignment complied with the plain meaning of § 400.9–102, RSMo, and thus is subject to Article 9. *Consolidated Film Industries v. United States* (D.Utah 1975) 403 F.Supp. 1279, l.c. 1281–1282, *rev'd on other grounds*, (C.A. 10 1977) 547 F.2d 533; *In re Komfo Products Corporation* (E.D.Pa.1965) 247 F.Supp. 229, l.c. 233; *Sherburne Corporation v. Carter*, 133 Vt. 411, 340 A.2d 82, l.c. 85–86 (1975); *Bramble Transportation, Inc. v. Sam Senter Sales, Inc.* (Del.Super.1971) 294 A.2d 97, l.c. 100–101, *aff'd*, (Del.1972) 294 A.2d 104; Annot., 30 A.L.R.3d 9, l.c. § 7 (1970), and the cases collected therein.

In a Missouri case entitled *Vittert Construction & Investment Company v. Wall Covering Contractors, Inc.* (Mo.App.1971) 473 S.W.2d 799, Wall Covering Contractors, Inc. (Wall) assigned certain accounts to Clark Painting Company (Clark) for $5,101.44. Clark contended that the transaction was excluded from Article 9 by § 400.9–104(f), RSMo. The St. Louis Court of Appeals rejected the argument, concluding that: (1) the transaction was not part of a sale of the business out of which the accounts arose; (2) the transaction was a commercial financing transaction; and (3) even if the assignment were for collection only, Clark's interest in the assignment was no higher than that of Wall, the assignor. The interest of Wall was admittedly subject to two other superior claims, namely, (a) a final judgment and (b) a federal tax lien. The St. Louis Court of Appeals affirmed the findings of the trial court, holding that the failure of Clark to file a financing statement made its claim subordinate to the

---

. . . any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper.

**4.** The 1972 amendment to the Uniform Commercial Code eliminated the term "contract right" as unnecessary. U.C.C. § 9–106, Official Reasons for 1972 Change. Because the State of Missouri has not adopted the 1972 amendment, the technical distinction between "contract right" and "account" will be retained in the *instant case*. Nevertheless, *it is submitted* that in the context of this case this technical distinction has no legal significance. Therefore, relevant case law involving "accounts"

will also be cited in this opinion in regard to any discussion of "contract rights."

**5.** § 400.9–104(f), RSMo, reads as follows:

This article does not apply

(f) to a sale of accounts, contract rights or chattel paper as part of a sale of the business out of which they arose, or an *assignment of* accounts, contract rights or chattel paper which is for the purpose of collection only, or a transfer of a contract right to an assignee who is also to do the performance under the contract [.]

claims of the judgment creditor and the United States. 473 S.W.2d l.c. 803–804.

The problems encountered in applying the exclusions from 'Article 9 of § 400.9–104(f), RSMo, are explained in Comment, *Assignment of Accounts and Contract Rights*, 1977 Utah L.Rev. 331, l.c. 333–334 as follows:

> While the Code avoids the difficulties of the loan/sale distinction, the drafters of the Code ran into problems when attempting to define the scope of Article Nine in such a way as to include both methods of accounts receivable financing and still exclude true sales of accounts and contract rights which do not have a financing purpose. An early draft of the Code attempted to achieve this result by including only "financing sales" of accounts and contract rights within the scope of Article Nine. The limiting term "financing" was later rejected because it was felt to be too vague and the scope was expanded to include "any sale of accounts, contract rights or chattel paper" except those excluded by section 9–104(f).

> The apparently broad applicability of Article Nine inherent in the term "any sale" is narrowed by section 9–104(f) which excludes from Article Nine transfers of accounts and contract rights in the following circumstances: (a) when accounts are sold along with the sale of a business out of which they arose; (b) when accounts are transferred for collection purposes only; and (c) when the right to payment under a contract is transferred to an assignee who must also perform under the contract. There is some disagreement as to whether the section 9–104(f) list of exclusions is illustrative or exclusive. Professor Gilmore, who served as Reporter of Article Nine, has suggested that section 9–104(f) excludes all non-financing sales and that the three situations listed are only examples of non-financing sales. Other commentators, however, have concluded that Article Nine applies to any sale of accounts or contract rights except those specifically listed in section 9–104(f). Thus, the extent of Article Nine's applicability to sales of accounts and contract rights is still open to debate. [Footnotes omitted.]

Whether the list of exclusions in § 400.9–104(f), RSMo, is illustrative or exclusive, commercial financing transactions are not excluded from Article 9 by § 400.9–104(f), RSMo. *Consolidated Film Industries v. United States, supra,* (D.Utah 1975) 403 F.Supp. 1279, l.c. 1281–1282, *rev'd on other grounds,* (C.A. 10 1977) 547 F.2d 533; *Bramble Transportation, Inc. v. Sam Senter Sales, Inc., supra,* (Del.Super.1971) 294 A.2d 97, l.c. 101, *aff'd,* (Del.1972) 294 A.2d 104; 2 W. Hawkland, A Transactional Guide to the Uniform Commercial Code 573 (1964); U.C.C. § 9–104, Comment ¶ 6.

Because the assignment of the contract right by Hall to Bank was a commercial financing transaction, it is concluded that the assignment of the contract right is subject to Article 9.

## II. BANK HAS A SECURITY INTEREST IN THE CONTRACT RIGHT ASSIGNED TO IT BY HALL

Article 9 governs the nature and validity of any security interest of Bank in the contract right assigned to Bank by Hall. Section 400.9–204(1), RSMo, a part of Article 9, provides that the three conditions (1) agreement, (2) value and (3) collateral must be met before a security interest can attach. Further, a debtor acquires no rights in a contract right until the contract has been made. § 400.9–204(2)(c), RSMo.

■ For the following reasons it is determined that a security interest of Bank in the contract right, assigned to Bank by Hall, attached on August 28, 1968, because: (1) a written agreement of assignment was entered into by Hall and Bank on that date (Stipulation, ¶¶ 5, 6); (2) value, in the form of a loan, was given by Bank to Hall (Stipulation, ¶¶ 5, 6); and (3) the debtor, Hall, had acquired rights in the collateral, the contract right, because of the then existing subcontract of June 12, 1968, between Hastings and Hall (Stipulation, ¶¶ 3, 4).

Therefore, it is concluded that the assignment by Hall to Bank on August 28, 1968, of the contract right constituted a security interest within Article 9, subject to the filing requirements of Article 9.[6]

## III. BANK DID NOT PERFECT ITS SECURITY INTEREST IN THE CONTRACT RIGHT ASSIGNED TO IT BY HALL

■ Section 400.9–303, RSMo, prescribes the requirements of perfection of a security interest. Ordinarily, perfection of a security interest occurs through either (1) the filing of a financing statement, or (2) possession of the collateral. The security interest of Bank in the contract right was not perfected by either method. First, neither Hall nor Bank filed a financing statement concerning the assignment of August 28, 1968 (Stipulation, ¶ 9). Second, Bank could not and did not perfect a security interest in the contract right by possession. § 400.9–305, RSMo, and U.C.C. § 9–305, Comment ¶ 1.

It is concluded that only exception from the perfection requirements provided in § 400.9–302(1), RSMo ("automatic perfection"), could give Bank a perfected security interest in the contract right assigned to Bank by Hall. The exception described in subparagraph (e) of § 400.9–302(1), RSMo, must be examined to determine this question.

This judicial construction of § 400.9–302(1)(e), RSMo, in this action is one of first impression in Missouri. The available legal materials that are relevant to this construction are discussed below.

Section 400.9–302(1)(e), RSMo, provides: (1) A financing statement must be filed to perfect all security interests except the following: . . .

(e) an assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor [.]

The Missouri Code Comment to this Section recommends caution to the creditor but provides no quantitative guide for measuring a "significant part." The Comment to § 400.-9–302(1)(e), RSMo, states:

Paragraph (e) does not define what is a "significant part" of outstanding accounts, so care should be exercised in determining whether or not to file a financing statement.

The Uniform Commercial Code Comment to § 9–302 reads in pertinent part as follows:

The purpose of the subsection (1)(e) exemptions is to save from *ex post facto* invalidation casual or isolated assignments: some accounts receivable statutes have been so broadly drafted that all assignments, whatever their character or purpose, fall within their filing provisions. Under such statutes many assignments which no one would think of filing may be subject to invalidation. The subsection (1)(e) exemptions go to that type of assignment. Any person who regularly takes assignments of any debtor's accounts should file. In this connection Section 9–104(f) which excludes certain transfers of accounts and contract rights from the Article should be consulted.

## BURDEN OF PROOF AND VARYING TESTS OF NO "SIGNIFICANT PART" EXEMPTION

So, in this action, according to the Uniform Commercial Code Comment, the principal factor in determining whether to apply the exemption is the regularity[7] with

---

6. The argument of Bank that it has an equitable assignment rather than a security interest is without merit. The conclusion that the assignment in question is a security interest as defined by Article 9 resolves that argument contrary to the claims of Bank. § 400.1–103, RSMo.

7. Paragraph 5 of the Comment on U.C.C. § 9–302, referring to subsection (1)(e), states

that any "person who regularly takes assignments of any debtor's accounts should file." This may be another way of saying that if an assignment is to be exempted under U.C.C. § 9–302(1)(e) from the filing requirements of Article 9, the assignment must be casual or isolated. ("The purpose of the subsection (1)(e) exemptions is to save from *ex post facto* invalidation casual or isolated assignments . . . ." U.C.C. § 9–302, Comment ¶ 5.) But

which the assignee Bank takes assignments. The language of the applicable statute, however, "focuses on the ratio between the accounts [or contract rights] assigned and the total accounts [or contract rights] of the assignor." Comment, *Assignment of Accounts and Contract Rights,* 1977 Utah L.Rev. 331, l.c. 336. The case law uniformly requires that the assignee bear the burden of proof in establishing that the exemption of § 9–302(1)(e) (§ 400.9–302(1)(e), RSMo) applies. Burke, *Uniform Commercial Code Annual Survey: Secured Transactions,* 33 Business Lawyer 1951 (1978). The courts and commentators are divided in regard to the nature of the required proof. Several tests, described hereinafter, have been developed. *See generally* Comment, *Assignment of Accounts and Contract Rights,* 1977 Utah L.Rev. 331, l.c. 336–337; Annot., 30 A.L.R.3d 9, l.c. § 18[d] (1970), and the cases collected therein.

First, some jurisdictions follow the plain meaning of the statute and apply a "significant part" test. *Consolidated Film Industries v. United States, supra,* (C.A. 10 1977) 547 F.2d 533 (holding that the assignee failed to prove that the assignment did not constitute a significant part of the outstanding accounts or contract rights of the assignor); *Miller v. Wells Fargo Bank International Corp.* (S.D.N.Y.1975) 406 F.Supp. 452, l.c. 477, aff'd, (C.A. 2 1976) 540 F.2d 548 (holding twenty percent of the total accounts of the assignor to be a "significant part"); *In re B. Hollis Knight Co.* (E.D.Ark.1978) 461 F.Supp. 1213 (holding fourteen percent of the total accounts of the assignor not to be a "significant part"); *Nevada Rock & Sand Co. v. United States Dept. of Treasury I.R.S.* (D.Nev.1974) 376 F.Supp. 161, l.c. 165 note 6 (holding that the

assignment did transfer a significant part of the contract rights of the assignor, without indicating what the percentage was); *Standard Lumber Company v. Chamber Frames, Inc.* (E.D.Ark.1970) 317 F.Supp. 837, l.c. 840 (holding sixteen percent of the total accounts of the assignor not to be a "significant part"); *Park Avenue Bank v. Bassford,* 232 Ga. 216, 205 S.E.2d 861, l.c. 863 (1974) (holding that the assignment did transfer a significant part of the outstanding contract rights of the assignor, without indicating what the percentage was).

Second, some jurisdictions follow the Uniform Commercial Code Comment to § 9–302 and apply a "casual or isolated" transaction test. Two unusual applications of the "casual or isolated" transaction test are found in *Architectural Woods, Inc. v. State,* 88 Wash.2d 406, 562 P.2d 248 (En Banc 1977) and *In re First General Contractors, Inc.* (S.D.Fla.1971) 12 UCC Rep.Serv. 762. Both cases permitted "automatic perfection" in spite of findings that the assignments constituted a significant part of the accounts or contract rights of the assignor. On the other hand, in *H. & Val J. Rothschild v. Northwestern National Bank of St. Paul,* 309 Minn. 35, 242 N.W.2d 844, l.c. 847 (1976), the Supreme Court of Minnesota found that although the assignee Rothschild Bank had held only five assignments in ninety years, it did not qualify for the filing exemption because, *inter alia,* of its other extensive commercial financing experience.

Third, some courts appear to require for "automatic perfection" that an assignment comply with both the "significant part" and the "casual or isolated" transaction tests. *City of Vermillion, S.D. v. Stan Houston*

---

Professor Gilmore, who was Reporter for Article 9, emphasized regularity when he stated that U.C.C. § 9–302(1)(e) was "carefully drafted so that no assignee, engaged in a regular course of financing, will ever be tempted to rely on it in order to avoid a filing which ought to be made." 1 G. Gilmore, Security Interests in Personal Property § 19.6, l.c. 538 (1965).

Paragraph 5 of the Comment on U.C.C. § 9–302, referring to subsection (1)(e), also states

that U.C.C. § 9–302(1)(e) is broad in scope covering for the purpose of saving "from *ex post facto* invalidation casual or isolated assignments . . . which no one would think of filing . . . ." Professor Gilmore suggested that the "beneficent purpose" of U.C.C. § 9–302(1)(e) was to protect "assignees who are both insignificant and ignorant." 1 G. Gilmore, Security Interests in Personal Property § 19.6, l.c. 538 (1965).

*Equipment Co.* (D.S.D.1972) 341 F.Supp. 707, l.c. 712; *H. & Val J. Rothschild v. Northwestern National Bank of St. Paul, supra,* 309 Minn. 35, 242 N.W.2d 844, l.c. 847–848 (1976); *E. Turgeon Construction Co. v. Elhatton Plumbing & Heating Co.,* 110 R.I. 303, 292 A.2d 230, l.c. 234–235 (1972); *Abramson v. Printer's Bindery, Inc.* (Tex.Civ.App.1969) 440 S.W.2d 326, l.c. 327–328.

Fourth, there is authority that an assignment of accounts or contract rights insignificant in dollar amount qualifies for the filing exemption. *Miller v. Wells Fargo Bank International Corp., supra,* (S.D.N.Y.1975) 406 F.Supp. 452, l.c. 477, *aff'd,* (C.A. 2 1976) 540 F.2d 548; 1 Bender's Uniform Commercial Code Service, P. Coogan, W. Hogan & D. Vagts, Secured Transactions Under the Uniform Commercial Code § 4.08[2][a], l.c. 314.12, § 4.08[2][b], l.c. 314.12–314.13 (1978).

On November 9, 1978, counsel for the United States, Bank and Hall filed separate responses to the Court's "Request for Additional Information" of September 7, 1978, which is reproduced above in material parts under the heading "Stipulated Facts and Motions for Summary Judgment." Together the three responses state that: the dollar amount payable to Hall as subcontractor for full performance of the subcontract entered into by Hall and Hastings on June 12, 1968, was $72,561.05; the total dollar amount actually paid to Hall by Hastings for performance of the subcontract dated June 12, 1968, was $60,120.80, of which $6,141.94 was paid into the registry of this Court; the dollar amount of all loans made by Bank from January 1, 1968 to August 31, 1968, was $172,000; on September 12, 1977, all business records, books of account and other papers of Hall were destroyed by fire and flood; and no other information requested by this Court is available.

■ It is determined that the assignee Bank has failed to establish that it has met any of the above tests for qualifying for the exemption under § 400.9–302(1)(e), RSMo. Bank has not shown that the assignment of the contract right by Hall to Bank on August 28, 1968, did not transfer to Bank a significant part of the contract rights of the assignor, Hall. In fact the contrary appears. Also, the assignment of the contract right by Hall to Bank on August 28, 1968, was neither casual nor isolated. Bank was, and is, engaged in extensive commercial financing. Whether Bank regularly takes assignments of contract rights, as distinguished from other collateral security, is not decisive. *See H. & Val J. Rothschild v. Northwestern National Bank of St. Paul, supra,* 309 Minn. 35, 242 N.W.2d 844, l.c. 847 (1976). Finally, Bank has not proven that the dollar amount of the contract right assigned by Hall to Bank on August 28, 1968, is insignificant. Because Bank has not met any of the above tests under § 400.9–302(1)(e), RSMo, it is not necessary to determine which of the alternate tests the courts of Missouri would use in applying the exemption of § 400.9–302(1)(e), RSMo.

Therefore, it is concluded that Bank does not have a perfected security interest in the contract right assigned to Bank by Hall on August 28, 1968.

## IV. THE UNITED STATES HAS A VALID LIEN FOR UNPAID TAXES AGAINST THE CONTRACT RIGHT ASSIGNED TO BANK BY HALL

■ Section 6321, Title 26, United States Code reads in the material part as follows:

If any person liable to pay any tax neglects or refuses to pay the same after demand, *the amount (. . .) shall be a lien in favor of the United States upon all property and rights to property,* whether real or personal, *belonging to such person.* [Emphasis added.]

State law determines whether the taxpayer has "property" or "rights to property" to which a federal lien for unpaid taxes can attach. *Aquilino v. United States,* 363 U.S. 509, l.c. 512–514, 80 S.Ct. 1277, l.c. 1280–1281, 4 L.Ed.2d 1365, l.c. 1368–1369 (1960).

Bank argues that Hall "has no property or right" to the subcontract dated June 12, 1968, between Hastings and Hall to which any federal tax claim could attach. This argument is without merit. Applying the Uniform Commercial Code as enacted in

Arkansas, the United States Court of Appeals for the Eighth Circuit in *United States v. Trigg* (C.A. 8 1972) 465 F.2d 1264, l.c. 1268, *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973), stated:

> We do not agree that, under Arkansas law, the assignment of accounts receivable placed the progress payments beyond the reach of a tax lien. . . .

> The UCC does not classify the debtor's interest in the collateral securing the debt as "property" or "rights to property," the terms traditionally used by the Supreme Court. *See Aquilino v. United States, supra,* 363 U.S. at 514, 80 S.Ct. 1277. The draftsmen made no attempt to fix location of title to collateral securing a creditor's interest. . . . The UCC focuses on rights and duties of the secured party, the debtor, and third parties, rather than on the location of title. As a result, the draftsmen found it unnecessary to classify the legal interest held by the secured party and by the debtor in the collateral. If the secured party fails to perfect his interest, the UCC grants rights against the collateral to third party creditors regardless of the legal interest held by either the secured party or the debtor. [Citation omitted.][8]

A federal tax lien is not valid as against a holder of a "security interest" or "purchaser," however, until the appropriate notice has been filed. § 6323(a), Title 26, United States Code. *See generally* the cases collected in Annot., 30 A.L.R.3d 9, l.c. § 34 (1970).

Bank argues that it qualifies as a holder of a protected "security interest,"defined in § 6323(h)(1), Title 26, United States Code (§ 6323(h)(1)), as follows:

> . . . any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. *A security interest exists at any time (A) if, at such time, the property is in existence [9] and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation,* and (B) to the extent that, at such time, the holder has parted with money or money's worth. [Emphasis added.]

■ The better view is that a protected "security interest" under § 6323(h)(1) means a perfected security interest under Article 9. 1A Bender's Uniform Commercial Code Service, P. Coogan, W. Hogan & D. Vagts, Secured Transactions Under the Uniform Commercial Code § 12.08[2], l.c. 12B–11, § 12.10[1], l.c. 12B–27—12B–28 (1978). Because Bank does not have a perfected security interest under Article 9 in the contract right, *see* Part III, *supra,* it is determined that Bank does not have a protected "security interest" under § 6323(h)(1) in the contract right.

Bank also argues that it qualifies as a "purchaser" as defined in the following § 6323(h)(6), Title 26, United States Code:

> (6) Purchaser. The term "purchaser" means a person who, for adequate and

---

**8.** *Contra, In re Halprin* (C.A. 3 1960) 280 F.2d 407. *Halprin* is discussed at length in Young, *Priority of the Federal Tax Lien,* 34 U.Chi.L. Rev. 723, l.c. 743–752 (1967). *Halprin* has not been followed by the majority of the cases comprising the great weight of authority. In *Randall v. H. Nakashima & Co., Ltd.* (C.A. 5 1976) 542 F.2d 270, l.c. 276, the Fifth Circuit stated as follows:

> *Halprin* has been roundly criticized in the literature. Of that court's conclusion that the taxpayer's contract right did not constitute property, Professor Young remarks that it "was a dubious position." Young, *Priority of the Federal Tax Lien,* 34 U.Chi.L.Rev. 723, 745 (1967). Professor Coogan labels *Halprin* "[a]n extreme case in which the 'no property'

concept was applied," and observes: "The case seems not to have been followed to any extent under similar circumstances." Coogan, *The Effect of the Federal Tax Lien Act of 1966 upon Security Interests Created under the Uniform Commercial Code,* 81 Harv. L.Rev. 1369, 1373 (1968). Even assuming *arguendo* that *Halprin* is applicable to the case at bar, we also decline to follow that decision.

**9.** A contract right is "property in existence" for purposes of § 6323(h)(1). *Pine Builders, Inc. v. United States* (E.D.Va.1976) 413 F.Supp. 77, l.c. 82–83; *Centex Construction Company v. Kennedy* (S.D.Tex.1971) 332 F.Supp. 1213, l.c. 1214–1216.

full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice. . . .

This argument is also without merit. Article 9 requires, with some exceptions, filing if the purchaser of contract rights or accounts is to be protected against a later *bona fide* purchaser. §§ 400.9–301(1)(d), 400.9–302, RSMo; *Nevada Rock & Sand Co. v. United States Dept. of Treasury I.R.S., supra,* (D.Nev.1974) 376 F.Supp. 161, l.c. 170, 172.

■ Because the United States filed the appropriate notices concerning its liens for unpaid taxes owed by Hall, even if Bank had a "security interest" in the contract right or was a "purchaser" of the contract right, the liens of the United States for unpaid taxes would still be valid against the contract right.[10] Therefore, it is determined that the United States has a valid lien for unpaid taxes against the contract right assigned to Bank by Hall.

## V. THE UNPERFECTED SECURITY INTEREST OF BANK IS SUBORDINATE TO THE LIENS FOR UNPAID TAXES OF THE UNITED STATES

■ The federal rule "first in time first in right" determines whether a federal tax lien under § 6321, Title 26, United States Code or a competing lien created by state law has priority. *United States v. City of New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). In *United States v. Trigg, supra,* (C.A. 8 1972) 465 F.2d 1264, l.c. 1269, *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973) the United States Court of Appeals for the Eighth Circuit described this federal rule as follows:

Under the basic federal priority standard, "first in time is first in right," a federal tax lien takes priority over a state-created lien unless the state lien is specific and perfected in the federal sense

before the federal tax lien arises. *United States v. Equitable Life Assurance Society of United States, supra,* 384 U.S. at 327, 86 S.Ct. 1561. With certain statutory exceptions, *see* 26 U.S.C. § 6323(a), a federal tax lien arises on the date of assessment. 26 U.S.C. § 6322; *see United States v. Vermont,* 377 U.S. 351, 353 n.3, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). At the time the United States assessed the contractor's tax liability, the bank's security interest was not specific and perfected, in the federal sense, because filing was required to protect the security interest against third party creditors. *See United States v. Crest Finance Co.,* 302 F.2d 568, 569 (7th Cir. 1962), on remand from 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342 (1961); *cf. United States v. New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

■ Any perfected or exempted "security interest" that arises prior to the filing of a notice of federal tax lien takes priority over that federal tax lien. *Dragstrem v. Obermeyer* (C.A. 7 1977) 549 F.2d 20, l.c. 23. Therefore, Bank would prevail in this action if it had filed in accordance with § 400.9–401(1)(c), RSMo, prior to the filing by the I.R.S. of the notices of federal tax liens against Hall. *United States v. Trigg, supra,* (C.A. 8 1972) 465 F.2d 1264, l.c. 1270, *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); *Richardson v. United States* (E.D.Ark.1973) 358 F.Supp. 994, l.c. 1000. On the other hand, unperfected security interests under Article 9 are subordinate to federal tax liens. *United States v. Trigg, supra,* (C.A. 8 1972) 465 F.2d 1264, l.c. 1270; *but see Major Electrical Supplies, Inc. v. J. W. Pettit Co.* (M.D.Fla.1977) 427 F.Supp. 752, l.c. 755–756 (holding that an unrecorded assignment was perfected under § 6323(h)(1) because under Florida law a judgment lien does not attach to the right to receive payment of a debt).

■ Because Bank has an unperfected and unprotected security interest under Ar-

---

**10.** This is not to say that the claims of Bank to the contract right would then necessarily be subordinate to the liens of the United States for unpaid taxes. Whether a federal tax lien has priority over a competing lien created under state law is discussed in Part V, *infra.*

ticle 9 in the contract right assigned to Bank by Hall, *see* Part III, *supra*, it is determined that the security interest of Bank is subordinate to the liens of the United States for unpaid taxes.

## VI. MADDEN DOES NOT HAVE AN ATTORNEY'S LIEN SUPERIOR TO LIENS OF UNITED STATES AND BANK

Pursuant to § 484.130, RSMo, Madden, as counsel for Hall, claims an attorney's lien allegedly superior to the liens of the United States and Bank. Section 6323(b)(8), Title 26, United States Code, the applicable federal statute, provides some protection against federal tax liens. It reads, in part, as follows:

(b) Protection for certain interests even though notice filed.—

Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—

(8) Attorneys' liens.—With respect to a judgment or other amount in settlement of a claim or of a cause of action, *as against an attorney who, under local law, holds a lien upon or a contract enforcible against such judgment or amount*, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, . . . [Emphasis added.]

The "Attorney's Contract" dated July 11, 1969, entered into by Madden and Hall, states in the material part as follows:

COMPENSATION: Clients hereby agree to pay attorneys for their retention and services:

A CONTINGENT FEE OF 50% of the gross amount received by way of settlement of the matter, before suit is filed or trial is commenced. *If suit is filed or trial is begun, attorneys to receive a fee of 50% of the gross amount received*, after first deducting expenses.

. . . [Emphasis added.]

The applicable Missouri statutes are §§ 484.130 [11] and 484.140,[12] RSMo. Section 484.130, RSMo, gives an attorney a lien upon the cause of action of his client. The compensation of an attorney for services rendered is governed by the agreement entered into by the attorney and his client. Section 484.140, RSMo, gives an attorney a lien, if the notice requirement is met, upon his client's claim for a percentage of the proceeds. In other words, the statute governs attorneys' liens in contingent contracts. Madden has presented no evidence to this Court that he complied with the written notice requirements of § 484.140, RSMo. With one notable exception, *Orr v. Mutual Ben. Health & Accident Ass'n* (Mo. App.1947) 240 Mo.App. 236, 207 S.W.2d 511, however, this factor alone has not barred an attorney from his statutory lien. *See White-*

11. § 484.130, RSMo, reads as follows:

The compensation of an attorney or counselor for his services is governed by agreement, expressed or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

12. § 484.140, RSMo, reads in the material part as follows:

In all suits in equity and in all actions or proposed actions at law, . . . ., it shall be lawful for an attorney at law either before suit or action is brought, or after suit or action is brought, to contract with his client for legal

services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, . . . ., and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or defendants, or proposed defendant or defendants, that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action, then said agreement shall operate from the date of the service of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof, which the client may have against the defendant or defendants, or proposed defendant or defendants, and cannot be affected by any settlement between the parties either before suit or action is brought, or before or after judgment therein, . . .

*cotton v. St. Louis & H. Ry. Co.,* 250 Mo. 624, 157 S.W. 776 (1913); *Taylor v. St. Louis Merchants' Bridge Terminal Ry. Co.,* 207 Mo. 495, 105 S.W. 740 (1907). Section 484.-140, RSMo, is remedial and will be liberally construed. *Wait v. Atchison, T. & S. F. Ry. Co.,* 204 Mo. 491, 103 S.W. 60 (1907).

 Nevertheless, an attorney is bound by the terms of the contract entered into with his client. § 484.130, RSMo. The Supreme Court of Missouri in *Whitecotton v. St. Louis & H. Ry. Co., supra,* 250 Mo. 624, l.c. 630–631, 157 S.W. 776, l.c. 777 (1913), stated the applicable rule as follows:

> . . . absent a showing of such particular kind of fraud or partial settlement, . . ., and present a complete and undisturbed settlement between the client and his adversary of the whole claim, . . ., then the measure of the attorney's recovery against the settling defendant is the attorney's contractual percentage of the compromise sum *actually received by the litigant* (no more and no less). [Citations omitted; emphasis added.]

Hall has not been, nor will it be, awarded any part of the interpleaded funds. Both the United States and Bank have claims to the fund superior to the claim of Hall. Because, according to the "Attorney's Contract," Madden is "to receive a fee of 50% of the gross amount received" by Hall, it is determined that Madden is not entitled to an attorney's fee in this action. Therefore, the motion of Madden for an attorney's lien will be denied.

### ADDENDUM

After the preparation of these findings of fact and conclusions of law, the United States Court of Appeals for the Eighth Circuit filed an opinion in an appeal entitled *In re B. Hollis Knight Co., Davidson, Trustee v. Union National Bank of Little Rock,* 605 F.2d 397 (C.A.8 1979), *reversing and remanding* the decision of the District Court in an action bearing the same title, (E.D.Ark.1978) 461 F.Supp. 1213, *supra.* The appeal involved the interpretation and application of the Arkansas version of Arti-

cle 9, U.C.C. (Ark.Stat.Ann. § 85–9–302(1)(e) amended to adopt the 1972 revision of Article 9), in circumstances similar to those in the present action.

The conclusions of law of the Court of Appeals in that case are consistent with the above conclusions of law of this Court concerning § 400.9–302(1)(e), RSMo, which does not contain the 1972 revision of Article 9, U.C.C.

### ORDERS

For the above reasons, it is hereby

ORDERED that the motion of the United States for summary judgment be, and it is hereby, granted, and that the motion of Bank for summary judgment be, and it is hereby, denied. It is further

ORDERED that the motion of Madden for an attorney's lien be, and it is hereby, denied.